Tony R. Burgett ("the father") appeals from a judgment divorcing him from Stephanie Jill Burgett ("the mother") insofar as that judgment awarded custody of the parties' minor child to the mother and ordered him to pay child support. We affirm in part, reverse in part, and remand.
 Procedural History
On January 12, 2006, the father filed a complaint for a divorce from the mother. In his complaint, the father requested permanent and pendente lite custody of the parties' minor child. The father supported his request for custody with an affidavit in which he stated that the child had been living with him since December 18, 2005, because the mother had become addicted to Xanax, a prescription medication, and was unable to properly carry out her parenting duties. On January 24, 2006, the mother answered the complaint and counterclaimed for a divorce. On February 7, 2006, the father answered the mother's counterclaim. On February 22, 2006, the mother filed her own affidavit; in her affidavit she stated that, after the parties' had *Page 909 
separated in September 2004, the child had lived with her until December 18, 2005, when the child went to live with the father while she was healing after having had multiple surgeries. She also denied being addicted to Xanax.
After a March 2, 2006, hearing, the court entered a pendente lite order on March 3, 2006, providing that the parties exercise joint legal and physical custody of the child and that the parties alternate physical custody every seven days. The father was also ordered to pay child support.
On October 31, 2006, when the trial commenced, the mother testified that, two days earlier, the parties child had indicated to her that the father had touched her inappropriately. The mother testified that she had contacted the Marshall County Department of Human Resources ("DHR") the next day and that Carolyn Gilbert, an investigator with DHR, had interviewed the mother, the mother's two children from a previous marriage, and the parties' child that same day. Gilbert testified that she had recommended that the child undergo a medical examination and a forensic evaluation and that a safety plan be implemented.
Based on the testimony of the mother and Gilbert, the court continued the trial and entered an amended pendente lite order suspending the child's contact with the father until a forensic psychologist had evaluated the child and determined the nature and extent of what had caused the child to demonstrate or exhibit alarm and a desire not to be around the father. The order further noted that the parties had agreed that Dr. Franklin Preston, a forensic psychologist, would perform the forensic evaluation on the child and would report his findings to the court. The court stated that after the court received the report, it would enter another order regarding pendente lite visitation with the father.
Dr. Preston's findings were inconclusive; he did, however, recommend that, if and when the father was again allowed contact with the child, a safety plan should be implemented. On February 5, 2007, the father filed a motion requesting that the trial court restore his right to joint custody of the child under the March 3, 2006, pendente lite order and that it set the case for a final hearing. In support of his motion, the father attached a letter from DHR showing that the allegations of child abuse had been determined to be "not indicated." On February 22, 2007, the trial court ordered that the father be allowed visitation with the child after implementation of a "safety plan" through DHR. The court stated that once a plan had been developed, it would set a hearing to determine the adequacy of that plan.
On March 9, 2007, the father filed a motion for immediate restoration of his right to joint custody of the child under the March 3, 2006, pendente lite order. In that motion, he alleged that he had contacted DHR and had been informed that their file had been closed because of the "not indicated" finding. He stated that, pursuant to an agreement of the parties, he had been visiting with the child every weekend at the home of, and under the supervision of, his mother. On March 19, 2007, the court held a hearing on the father's March 9, 2007, motion. At the hearing, the DHR caseworker testified that the allegations against the father had been found "not indicated" but that the case had been assigned to her to implement a safety plan pursuant to the court's order. She testified that DHR had determined that no safety plan was needed. Thereafter, the court entered an order on March 23, 2007, stating that the father would exercise pendente lite visitation pursuant to the court's *Page 910 
standard visitation order, with a minor modification.
On May 8, 2007, the trial court held a final hearing; on May 10, 2007, the trial court entered a judgment that, among other things, awarded the parties joint legal custody of the child, awarded the mother primary physical custody of the child, awarded the father visitation pursuant to the court's standard visitation order, with a minor modification, ordered the father to pay $1,000 per month in child support, and ordered the father to pay $50 monthly toward his pendente lite child-support arrearage. The trial court noted that there was insufficient evidence to reasonably satisfy the court that the father had sexually abused the child and that there was insufficient evidence to reasonably satisfy the court that the mother had intentionally lied about the allegations. On June 11, 2007, the father filed a motion to alter, amend, or vacate the trial court's judgment or for a new trial. That motion was denied on July 31, 2007. The father filed his notice of appeal to this court on September 7, 2007.
 Facts
The parties were married in August 2001. This marriage was the second marriage for the mother and the third for the father. The wife had twins, one son and one daughter ("the twins"), from her prior marriage, and the father had two sons ("the father's sons"), one from each of his prior marriages. At the time of trial, both parties were in their mid-thirties. The twins were 16 years old, and the father's sons were ages 16 and 11 years. The mother had primary physical custody of the twins, and the father had standard visitation with his sons. During their marriage, the parties had one child, whose date of birth was March 27, 2003.
In August 2004, the mother, the twins, and the parties' child moved out of the marital home. In April 2005, the parties began an attempt at reconciliation and began spending more time together. On November 3, 2005, the mother had surgery to remove part of a birthmark on her lower lip. On November 10, 2005, the mother had a panic attack and was treated at the emergency room. She was prescribed Adivan, but she did not get the prescription filled. The mother had a second panic attack on November 20, 2005. At that time, it was discovered that the mother had a gallstone. At some point in November 2005, the mother was prescribed and began taking Xanax for her anxiety. The father disapproved of the mother taking Xanax; he testified that he had noticed that the mother acted lethargic and had slurred speech when she took Xanax. The mother admitted that she had taken Xanax given to her by a friend when she had not had any of her own.
On November 23, 2005, the mother had surgery to remove her gallbladder. That night, she had a third panic attack. During the month of December, the mother went to the emergency room several times. The father testified that the mother had called him several times during November and December and had said that the child was driving her crazy and had asked him to come get the child. The mother admitted that she had asked the father to help with the child because the mother was sick. The father, however, did not get the child until December 18, 2005, when the father had taken two weeks off from work.
On January 5, 2006, the mother saw a counselor who recommended that she also see a psychiatrist. The mother did so, and the psychiatrist tapered her off Xanax. At the March 2, 2006, pendente lite hearing, the counselor testified that the mother was currently taking Lexapro, which is a prescription *Page 911 
antidepressant that is used to treat anxiety, and Clonopin, which is a prescription medication generally used to treat anxiety. He testified that the panic attacks could have been the result of the anesthesia or other medications used during the mother's surgeries. The counselor testified that, in his opinion, the mother had not abused prescription medication and that he was not concerned about the mother's ability to supervise children. The mother had continued seeing the counselor until October 2006.
The father testified that the mother had told him that she had had a nervous break-down; the mother, however, testified that she had told the father that she had been on the verge of a nervous breakdown in 1993. The father admitted that he had attempted suicide approximately 8 years before the trial. He also testified that he had been counseled by a mental-health professional and that he was certain he would not attempt suicide again.
The mother testified that she had been the primary caregiver for the child during the parties' marriage; the father, however, testified that he had spent more time with the child than the mother. Further, the father's older son testified that the father had gotten the child ready for church when the parties were together. The father's mother helps babysit the child. According to the father's mother, the mother had said that the mother's family did not help the mother with the child.
The father testified that in the fall of 2006 the mother had tried to get a diaper bag out of his truck and that he had nudged her away from his truck and had shut the door. He testified that the mother had started slapping him in the back of the head. The mother and the father filed criminal warrants against each other, but they were later dismissed. The father testified that the mother had tried to slap or "claw" him during the marriage.
The father and the father's mother testified that the mother had told them in March 2006 that she would do whatever she had to do to keep the child, including accusing the father of sexually abusing the child. Both parties admitted that the other was a good parent; however, they each voiced multiple concerns about the other parent's ability to properly care for the child.
The mother's income from employment is $2,167 per month. She also receives $350 every two weeks (or $758.33 monthly) as child support for the twins. Thus, her total income is $2,925.33 per month. During the parties' separation, the mother had taken a second job working at a restaurant because she could not pay her expenses. She testified that she planned to quit that job. The father testified that his salary is $9,313 per month and that he is eligible for a performance-based bonus at the end of each year. The previous two years, he had received a $10,000 bonus each year. Including the $10,000 bonus, the father's monthly income is $10,146.53.
The father prepared a spreadsheet showing his average monthly income and expenses. According to the spreadsheet, the father's average net income, including his bonus, in 2006 was $78,200 yearly, or $6,516 per month. The spreadsheet indicates that the father's average monthly expenses are $5,715. The father testified that he had forgotten to list his pest-control service, which costs $31 per month, on the spreadsheet. He testified that he receives $150 each month in reimbursement for cellular telephone expenses and the reimbursement is not reflected on the spreadsheet. Considering those two items, the father's monthly expenses would be $5,596. In his list of average monthly expenses, the father included $600 that he *Page 912 
had been paying as monthly child support to the mother, $500 monthly contributions to his church, and $60 for diapers for the child. Not including those three amounts, the father's monthly expenses are $4,436.
At the March 6, 2006, pendente lite hearing, the mother presented a document showing that her average monthly expenses were $3,570.47. The mother had included as a monthly expense $173.33 in donations to her church. Considering the mother's total monthly income of $2,925.33, and her monthly expenses (not including the church donations) of $3,397.14, she had a $471.81 monthly deficit. The only expense listed that was specific to the child was the $206 monthly day-care cost.
 Discussion I. Custody "When evidence in a child custody case has been presented ore tenus to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing."
Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996). "When . . . the trial court enters a judgment following an ore tenus proceeding, but does not make any express findings of fact, this court indulges the requisite presumptions that the trial court made those findings necessary to support its judgment and that those findings are correct." Dean v.Dean, [Ms. 2060809, Jan. 18, 2008] ___ So.2d ___, ___(Ala.Civ.App. 2008). "Moreover, matters of child custody lie within the sound discretion of the trial court." Dean, ___ So.2d at ___. "Alabama law gives neither parent priority in an initial custody determination. . . . The controlling consideration in such a case is the best interest of the child." Ex parte Byars, 794 So.2d 345, 347 (Ala. 2001) (citing Ex parte Couch, 521 So.2d 987 (Ala. 1988)).
In the present case, the facts were largely disputed. There was sufficient evidence, however, from which the trial court could have concluded that it was in the best interest of the child that the mother be awarded primary physical custody. The mother testified that she had been the primary caregiver of the child during the parties' marriage. Further, the father testified that he felt that the mother had been a good mother until she became ill in November 2005; there was no evidence presented indicating that the mother was still experiencing health problems at the time of the May 2007 trial. In fact, during the pendente lite hearing in March 2006, the mother's counselor testified that he had no concern with regard to the mother's ability to supervise children. Considering the hostility of the parties during the fall 2006 incident, the trial court could have properly determined that the parties were not properly suited for a joint-custody arrangement. See generallyDrummond v. Drummond, 785 So.2d 353, 356
(Ala.Civ.App. 1999), reversed on other grounds, 785 So.2d 358
(Ala. 2000).
Based on the foregoing, we conclude that the trial court did not exceed its discretion in awarding the mother primary physical custody of the child.
 II. Child Support
"`Matters related to child support . . . rest soundly within the trial court's discretion and will not be disturbed on appeal, absent a showing that the ruling is unsupported by the evidence and thus is plainly and palpably wrong.'"Volovecky *Page 913 v. Hoffman, 903 So.2d 844, 847 (Ala.Civ.App. 2004) (quoting Jackson v. Jackson, 111 So.2d 155, 158 (Ala.Civ.App. 2000)).
 "When the [parties'] combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce, and must reasonably relate to the obligor's ability to pay for those needs. . . . To avoid a finding of an abuse of discretion on appeal, a trial court's judgment of child support must satisfy both prongs."
Dyas v. Dyas, 683 So.2d 971, 973-74
(Ala.Civ.App. 1995) (footnote omitted).
In the present case, the father argues that the award of child support is not reasonably related to his ability to pay and is not rationally related to the reasonable and necessary needs of the child. The evidence shows that after the father pays his necessary monthly expenses, he is left with a $1,980 budget surplus. Accordingly, we reject the father's argument that the child-support award of $1,000 a month is not reasonably related to the father's ability to pay.
With regard to the father's second argument, we agree that there is insufficient evidence of what the reasonable and necessary needs of the child are. The mother's budget that she submitted included $3,570.45 in expenses for herself, the twins, and the child. That amount included $173.33 in church donations. Accordingly, the mother's necessary expenses for herself, the twins, and the child were $3,397.14. There was no testimony, how-ever, establishing what expenses, other than the $206 monthly day-care expense, were attributed to the needs of the child.
In Elliott v. Elliott, we reversed a child-support judgment and remanded the case for additional proceedings because, as in the present case, the only evidence of the child's needs was the evidence relating to the custodial parent's monthly living expenses. 782 So.2d 303
(Ala.Civ.App. 1999), reversed on other grounds, 782 So.2d 308
(Ala. 2000). The dissent argues that this case is "materially distinguishable" from Elliott, supra, because in this case the mother presented as an exhibit a document showing the breakdown of her monthly living expenses. The dissent argues that in Elliott, supra, the father presented "only a general estimate" of his total monthly living expenses. (Emphasis added.) We note, however, that the father in Elliott did not present only a general estimate of his total monthly living expenses. In fact, the father in Elliott, just like the mother in the present case, presented an exhibit setting out his monthly living expenses. In Elliott, supra, this court wrote:
 "At trial, the [father] introduced into evidence an exhibit setting out his anticipated monthly living expenses after the divorce (if the children were residing with him). He estimated that his total living expenses would be $7,557.24 per month. This is the only evidence regarding the `needs' of the minor children."
782 So.2d at 306 (emphasis added). Accordingly, we find no merit in the dissent's attempt to distinguish the present case from Elliott, supra.
Further, although the dissent argues that the evidence was sufficient for the trial court to set a reasonable amount of child support, we cannot find sufficient evidence to support an award of $1,000 a month in child support when the mother's total necessary expenses for the four-person *Page 914 
household totaled only $3,397.12 and the only evidence of the child's needs was that the mother incurred $206 in day-care expenses per month.[1] "Therefore, we reverse the portion of the judgment setting an amount of child support and remand for further proceedings that will allow the court to determine the reasonable and necessary needs of the [child]."782 So.2d at 306. In fashioning the award of child support on remand, the trial court should consider all the relevant factors set forth in Dyas, supra.
 Conclusion
Based on the foregoing, we affirm the divorce judgment with regard to the award of custody; we reverse the judgment with regard to the award of child support and remand the case for further proceedings.
The mother's request for the award of an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
BRYAN and THOMAS, JJ., concur.
THOMPSON, P.J., concurs in part and dissents in part, with writing, which PITTMAN, J., joins.
THOMPSON, Presiding Judge, concurring in part and dissenting in part.
"[M]atters of child support are within the sound discretion of the trial court and will not be disturbed absent evidence of an abuse of discretion or evidence that the judgment is plainly and palpably wrong." Spencer v. Spencer,812 So.2d 1284, 1286 (Ala.Civ.App. 2001).
 "When[, as here, the parents'] combined adjusted gross income exceeds $10,000 per month, the amount of child support should be left to the discretion of the trial court. Rule 32(C)(1), Ala. R. Jud. Admin.
 "This court has held, however, that a trial court's discretion is not unbridled and that the amount of child support awarded must relate to the reasonable and necessary needs of the children as well as to the ability of the obligor to pay for those needs. . . .
 ". . . .
 "When the combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce, and must reasonably relate to the obligor's ability to pay for those needs. . . . To avoid a finding of an abuse of discretion on appeal, a trial court's judgment of child support must satisfy both prongs."
Dyas v. Dyas, 683 So.2d 971, 973-74
(Ala.Civ.App. 1995) (footnote omitted).
The trial court received evidence regarding the mother's monthly expenses, including her expenses relative to housing, utilities, groceries, child care, and clothing for the mother and her children. The evidence showed that the mother's monthly expenses totaled $3,570, whereas her monthly income, as reflected on the CS-42 Child Support Guidelines form, was only $2,166. Furthermore, the father's monthly income, as reflected on the CS-42 Child Support Guidelines form, was $10,146.
I believe that the trial court had before it sufficient evidence to exercise its discretion and fashion a reasonable award of *Page 915 
child support — which it did. I do not believe that the mother was required in this case to more specifically designate what portion of her expenses — for example, what portion of her expense for housing — were "attributed to the needs of the child," as the main opinion suggests. The main opinion relies on Elliott v.Elliott, 782 So.2d 303 (Ala.Civ.App. 1999), reversed on other grounds, 782 So.2d 308 (Ala. 2000). However, in that case, the father, as the custodial parent, "estimated that his total living expenses would be $7,557.24 per month. This [was] theonly evidence regarding the `needs' of the minor children." 782 So.2d at 306 (emphasis added). I believe that this case is materially distinguishable from this court's decision in Elliott. Here, the mother presented specific evidence regarding her monthly expenses relative to housing, utilities, clothing, groceries, and child care. Unlike the father in Elliott, she did more than present only a general estimate of her total monthly living expenses. Based on the evidence of the mother's specific monthly expenses, I believe that the trial court acted within its discretion to fashion a reasonable award of child support. Accordingly, I respectfully dissent from the main opinion as to the child-support issue.
PITTMAN, J., concurs.
[1] We also note that the dissent does not consider the evidence that the mother receives child support for the twins in addition to her income from employment. The mother's total monthly income from all sources is $2,925.33. Her necessary monthly expenses are $3,397.14; therefore, the mother has a $471.81 monthly deficit.