PER CURIAM.
Irilmoskomazzarella Washington (“the husband”) appeals from an order of the Elmore Circuit Court divorcing him from Anita Washington (“the wife”) insofar as it divided the parties’ property, awarded the wife child support and custody of the parties’ minor son, and failed to award the husband alimony.

Procedural and Factual Background

The parties were married on August 16, 1997, and one child was born out of the marriage — a boy, born in January 2000 (“the son”). On March 28, 2006, the husband sued the wife for a divorce on the grounds of incompatibility of temperament, irretrievable breakdown of the marriage, and physical abuse.[1] The husband’s divorce complaint asked the trial court to equitably divide the parties’ property, to equitably divide the parties’ debts, and to award the parties joint legal custody of the son, with primary physical custody to the husband, and to award the husband child support in accordance with Rule 32, Ala. R. Jud. Admin. The husband also asked the trial court for temporary physical custody of the son and child support during the pendency of the divorce proceedings.
The wife counterclaimed for a divorce and asked the trial court to, among other things, award her physical custody of the son, award her child support for the benefit of the son, award her alimony, and order the marital residence to be sold and the proceeds of the sale to be equitably divided.
The trial court issued a pendente lite order on November 9, 2006, granting joint legal custody of the son to the parties, with the son’s primary residence with the husband, subject to specified visitation rights of the wife. The wife was ordered to pay $250 a month in child support in accordance with an agreement the parties had reached in mediation.
On April 10, 2007, the wife filed a motion seeking emergency custody of the son, alleging that the son had been in her exclusive custody for 12 consecutive days because the husband was hospitalized but would not inform the wife of his medical condition or when he thought he would be released from the hospital. On April 18, 2007, the trial court entered a pendente lite order awarding physical custody of the son to the wife.[2] The trial court denied the husband’s motion to reconsider the award of custody of the son to the wife.
The husband subsequently amended his complaint for a divorce to request an award of alimony and to include as grounds for the divorce emotional and mental cruelty; physical cruelty; adultery; emotional, physical, and financial neglect; and abandonment.
After conducting two ore tenus hearings, the trial court, on January 16, 2008, entered a judgment divorcing the parties on the ground of incompatibility of tempera- *1130 merit.[3] The divorce judgment, among other things, granted the parties joint legal custody of the son, “with primary residence of [the son] being placed with the [wife],” subject to visitation rights of the husband; ordered the husband to pay $102.71 per month in child support; awarded the husband “exclusive use of the marital residence,” with an order to pay the debt thereon; ordered the husband to “refinance the debt on the marital residence within 100 days and ... pay to [the wife] the sum of $56,375.50 as her part of the net equity” in the residence; awarded the wife the parties’ jointly owned timeshare; awarded the wife the parties’ jointly owned Janus fund; awarded the husband the parties’ jointly owned “Grady property”; and awarded the parties certain vehicles, subject to the debts on those vehicles.
On February 14, 2008, the husband filed a motion to alter, amend, or vacate the judgment or, in the alternative, a motion for a new trial and requested a stay of execution of the trial court’s divorce judgment. On February 15, 2008, the wife filed a “Motion to Amend/Supplement Final Decree of Divorce (Rule 59[, Ala. R. Civ. P.]) [and] Motion to Show Cause.” The wife alleged that the husband would not be able to refinance the debt on the marital residence because he had intentionally failed to pay the mortgage on the residence.
The trial court conducted a hearing on the parties’ postjudgment motions, and on March 26, 2008, the trial court issued an order amending the final judgment of divorce. The trial court, among other things, ordered the sale of the marital residence, but it allowed the husband to have continued use of the marital residence until it sold; the trial court ordered the husband to pay the wife $56,375.50 from the sale proceeds, and the remaining balance of the sale proceeds were awarded to the husband.
The husband filed his notice of appeal to this court on April 25, 2008. The husband alleges five issues on appeal: 1) that the trial court exceeded its discretion in awarding physical custody of the son to the wife, 2) that the trial court erred as a matter of law in awarding child support to the wife, 3) the trial court exceeded its discretion in the division of the marital property and in its failure to award alimony to the husband, 4) that an order entered by the trial court on April 23, 2008, is void, and 5) that an order entered by the trial court on October 20, 2008, is void.[4]
The testimony presented to the trial court revealed the following pertinent facts. The wife was 41 years old at the time of the final hearing, and she is a retired member of the United States Air Force; she was on active duty during a large part of the parties’ marriage. The husband was 49 years old at the time of the final hearing, and he had not had a job since 2003. The husband received a back injury during his service in the United States Army, and at the time of the final hearing his only income was disability benefits from the Social Security Administration and from the Veteran’s Administration (“the VA”). The husband was the primary caretaker of the son because the wife worked full time.
The wife denied having a violent temper, but she did admit to hitting the husband on his arm, on one occasion in 1998, because the husband would not communicate *1131 with her. The wife stated that she “hit him about four times, open hand, on his arm as he blocked.” The husband testified that the reason the wife hit him on that one occasion was because he went to a bar after work and stayed out late, without telling the wife where he was. In his testimony he stated: “she came over [to the bed] and started beating on me and saying that I could have at least told her that I was going out because something could have happened .... ”
The wife characterized the husband as both “suicidal” and “homicidal.” She testified that, at one point during an argument, the husband had put his hands around the wife’s neck “in a choking method.” The wife testified, that during her struggle to remove the husband’s hands from around her neck, they had both fallen onto their bed, which broke.
The wife further testified that the husband always carried a loaded gun in the driver’s side door pocket of his vehicle. She further alleged that the husband had attempted to leave the son alone in the vehicle with the loaded gun while the parties went inside a store.
The wife testified that she had been diagnosed with thyroid cancer in 2005 and that her treatment had required two surgeries to remove the cancerous gland and three courses of radiation — one in August 2005, one in January 2006, and one in January 2007. The wife testified that her cancer is now in remission. The wife stated that the husband had been the primary caregiver to the son during her radiation treatments because her doctor had warned her that the radiation could have a harmful effect on the son; therefore, the wife decided to stay in a hotel for approximately one week after her radiation treatments. The wife also admitted that the husband had been the primary caregiver to the son while she was on active duty in the Air Force and that the husband had done the majority of the cooking after she retired from the military.
After the husband filed for a divorce in March 2006, the husband and the wife continued to live in the marital residence. The wife testified that, during that time, the parties had frequently gotten into arguments and that the police had been called on several occasions. As a result, the parties discussed the need for one of them to move out of the marital residence, and the wife agreed to find an apartment. The parties discussed the fact that the wife’s name was on most, if not all, of the utility bills for the marital residence; the wife testified that she and the husband had agreed to have the name on the utility bills changed to the husband’s name so the wife could activate utility services at the apartment she had planned to rent. This did not require the utilities to be “cut off’ as the husband alleged.
While the wife took the son to Disney World on vacation in August 2006, the husband changed all the locks to the marital residence. Upon their return, the husband allowed the wife and the son inside the marital residence, but after the wife took the son to school the next morning, she was unable to gain reentry into the marital residence. The wife was forced to move into the one-bedroom apartment where her 20-year-old son lived.[5] She testified that there was no room for the son in her older child’s apartment. She stated that she had had no choice but to leave the son with the husband because she had thought it would be in the son’s best interest to keep his living environment as stable as possible. The wife subsequently bought a three-bedroom home, *1132 but she testified that the husband had refused to allow her to take any of the furnishings from the marital residence.
The husband had custody of the son from August 2006 until April 2007, when the wife filed an emergency petition for a change in pendente lite custody. The "wife testified that, after she gained custody of the son, she had the Social Security benefits that were allotted to the son through the husband’s disability payment sent to her. The husband did not make any child-support payments after she gained custody of the son.
At the time of the hearings in this matter, the wife had three sources of income and earned $6,494.88 per month. She received $3,059.88 a month from a consulting contract with a health-care facility, which was due to expire at the end of January 2008; she received $1,427 per month in military-retirement benefits; and she received $2,008 a month in “temporary” disability benefits from the VA. The husband received Social Security disability benefits and benefits from the VA in the amount of $4,500 a month, which included benefits allotted for the son in the amount of $443 a month. The disability benefits received by the husband for the benefit of the son are used by the parties to pay the son’s private-school tuition. The wife testified that the husband was 60% disabled but that he chose to have an “unemployable” status; the wife testified that she believed the husband could work.
The parties then testified as to their assets and liabilities. The parties agreed that the marital residence was worth approximately $285,000; the mortgage on the marital residence was approximately $200,000 at the time of the hearings. The parties also jointly owned a piece of land in Grady worth approximately $30,800. The parties also jointly owned a timeshare that they had purchased in 2006, which was valued at approximately $20,000. The wife testified that the husband has never used the timeshare. She further testified that the timeshare was paid in full by a loan the parties took on their GMC Yukon Denali sport-utility vehicle. The wife had paid the timeshare dues for 2006 and 2007, in the amount of $568 and $648, respectively. The wife testified that she had opened a mutual fund (“the Janus fund”) before the parties were married but that she had added the husband’s name to the account after their marriage; the balance of the Janus fund at the time of the hearings was approximately $2,249.05.
The parties owned four vehicles: a 1976 Volkswagen that was “in the shop,” a 1994 BMW 318i, a 2002 GMC Yukon Denali, and a 1984 Chevy pickup truck. During the pendency of the divorce proceedings, the husband purchased two Mercedes automobiles; the husband wrecked the first Mercedes he had purchased in October 2006, but he subsequently bought a 2007 model that he was driving at the time of the final hearing. The husband testified that he paid $550 a month for the 2007 Mercedes and that, at the time of the final hearing, the husband owed approximately $35,000 on the car.
The husband testified at the second hearing that he had deliberately stopped making the mortgage payments on the marital residence, despite having been ordered by the court to make those payments, because he thought this would force the trial court to hold the second hearing at an earlier date. At the time of the second hearing, the husband had not paid the mortgage in three months, and the wife had been notified by their mortgage company that it was beginning foreclosure proceedings on the marital home. The wife introduced evidence indicating that her credit score had dropped nearly 150 points from May 2007 to January 2008 as a *1133 result of the husband’s failure to pay the mortgage on the marital residence, which was also in her name.
The husband stopped exercising his visitation rights with the son in October 2007. The wife tried to schedule visitation for the husband with the son, through her attorney, so that the husband could spend time with the son during the Thanksgiving and Christmas holidays, but the husband refused. The husband testified that he did not exercise his visitation rights because, he said, the wife had threatened to call the police if she needed to have the son returned home after a visit with the husband; the husband stated that he did not want to “traumatize” the child if the wife decided this action was necessary.

Discussion

I. Custody of the Son
“ “When evidence in a child custody case has been presented ore tenus to the trial court, that court’s findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing.’
“Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996).... ‘Moreover, matters of child custody lie within the sound discretion of the trial court.’ Dean [v. Dean], 998 So.2d [1060,] 1064 [ (Ala.Civ.App.2008) ]. ‘Alabama law gives neither parent priority in an initial custody determination.... The controlling consideration in such a case is the best interest of the child.’ Ex parte Byars, 794 So.2d 345, 347 (Ala.2001) (citing Ex parte Couch, 521 So.2d 987 (Ala.1988)).”
Burgett v. Burgett, 995 So.2d 907, 912 (Ala.Civ.App.2008).
On appeal, the husband argues that § 30-3-131, Ala.Code 1975, creates a presumption in his favor that primary physical custody of the son should not have been awarded to the wife. Section 30-3-131, a part of the Custody and Domestic or Family Abuse Act, § 30-3-130 et seq., Ala. Code 1975 (“the Act”), states:
“[A] determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence.”
The Act also states a further presumption, found in § 30-3-133, Ala.Code 1975:
“In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is in the best interest of the child to reside with the parent who is not a perpetrator of domestic or family violence in the location of that parent’s choice, within or outside the state.”
The husband argues that the trial court did not properly apply the Act because the trial court awarded primary physical custody of the son to the wife even though there was evidence indicating that the wife had perpetrated domestic violence against the husband. The trial judge did not make any specific findings of fact regarding the alleged incident of domestic abuse by the wife against the husband. However, this court, in Giardina v. Giardina, 987 So.2d 606, 615-16 (Ala.Civ.App.2008), noted that, in Ex parte Farm, 810 So.2d 631 (Ala.2001),
*1134 “the supreme court held that the plain language of the Custody and Domestic or Family Abuse Act contains no requirement that a trial court make express findings, 810 So.2d at 633, and in so holding it reaffirmed the well-established principle that ‘“[w]here a trial court does not make specific findings of fact concerning an issue, this Court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous,” ’ 810 So.2d at 636 (quoting Lemon v. Golf Terrace Owners Ass’n, 611 So.2d 263, 265 (Ala.1992)).
“In McClelland v. McClelland, 841 So.2d 1264, 1267 (Ala.Civ.App.2002), this court outlined three circumstances under which the trial court is not required to apply the presumption of § 30-3-133:
“ ‘This court assumes that the trial court found either that the acts alleged by the wife did not occur, that the husband’s acts did not constitute domestic abuse, or that both parties were guilty of abusive behavior. See J.H.F. v. P.S.F., 835 So.2d 1024, 1029 (Ala.Civ.App.2002).... ’
“841 So.2d at 1268-69. If one of the three circumstances outlined in McClel-land exists in a given case and the trial court is therefore not required to apply the presumption, then certainly the trial court is not required to make an express determination as to whether the presumption has been rebutted.”
We conclude that there was sufficient evidence from which the trial court could have determined that both the wife and the husband were guilty of abusive behavior. The wife admitted to hitting the husband four times on the arm, but the wife also offered undisputed testimony that the husband had tried to choke her during an argument. There was no evidence indicating that those incidents had any effect on the son; in fact, the son had not yet been born when the wife hit the husband in 1998.
The evidence also supports a finding by the trial court that it would be in the son’s best interest for the wife to have primary physical custody of the son. Although the husband had been the child’s primary caregiver, there was no evidence indicating that the wife was unfit to care for the son. The evidence showed that the wife was retired from the Air Force and that her cancer was in remission. Although the husband’s fitness as a parent was never questioned, the evidence suggested that the husband had some reckless traits, such as keeping a loaded gun in the car with the son. There was also evidence indicating that the husband had refused to exercise his visitation, despite the fact that the wife, through her attorney, had attempted to have the husband visit with the son during the Thanksgiving and Christmas holidays. Therefore, because the trial court’s judgment contained the initial custody determination, and because the only consideration of the trial judge was the best interests of the son, we conclude that the trial court did not err in awarding primary physical custody of the son to the wife.
II. Child Support
“ ‘ “Matters related to child support ... rest soundly within the trial court’s discretion and will not be disturbed on appeal, absent a showing that the ruling is unsupported by the evidence and thus is plainly and palpably wrong.” ’ Volovecky v. Hoffman, 903 So.2d 844, 847 (Ala.Civ.App.2004) (quoting Jackson v. Jackson, 777 So.2d 155, 158 (Ala.Civ.App.2000)).
“ ‘When the [parties’] combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the *1135 reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce, and must reasonably relate to the obligor’s ability to pay for those needs.... To avoid a finding of an abuse of discretion on appeal, a trial court’s judgment of child support must satisfy both prongs.’
“Dyas v. Dyas, 683 So.2d 971, 973-74 (Ala.Civ.App.1995) (footnote omitted).”
Burgett v. Burgett, 995 So.2d at 912-13.
The husband argues that the award of child support to the wife should be reversed because neither the husband nor the wife filed a CS-41 form (“Child Support Obligation Income Statement/Affidavit”). However, this court has held that “[wjhen the combined adjusted income [of the parents] exceeds $10,000 per month, the amount of child support should be left to the discretion of the trial court.” Dyas v.Dyas, 683 So.2d 971, 973 (Ala.Civ.App. 1995).
In O’Neal v. O’Neal, 678 So.2d 161, 165 (Ala.Civ.App.1996), this court held that, despite the parties’ failure to file CS-41 forms relating to child support, the record clearly established that “the parties’ income far exceeded the maximum amount of income dealt with in Rule 32. Therefore, the amount of child support to be awarded is discretionary with the trial court, and we find the amount awarded in this case to be reasonably related to the child’s needs.”
In the present case, the parties combined monthly income exceeds $10,000. The trial court ordered the husband to pay $102.71 in child support to the wife per month, in addition to the $443 the wife was receiving on behalf of the son from the husband’s disability benefits. However, there is nothing in the record to suggest that the trial court heard evidence of the “reasonable and necessary needs” of the son. Dyas 683 So.2d at 973. The wife concedes in her brief to this court that the “record contains very little in way of testimony regarding the expenses attributable to the child.”
In Dyas, this court reversed an award of child support because the record was “devoid of any evidence relating to the expenses associated with the present reasonable and necessary needs of the children.” 683 So.2d at 973.
Therefore, we hold that the trial court’s award of child support is unsupported by the evidence, and we reverse that portion of the divorce judgment pertaining to the award of child support and remand the case for further proceedings consistent with this opinion.
III. Division of Property and Alimony
“On appeal the division of property and the award of alimony are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either issue. See O’Neal v. O’Neal, 678 So.2d 161 (Ala.Civ.App.1996). A property division does not have to be equal in order to be equitable based on the particular facts of each case; a determination of what is equitable rests within the sound discretion of the trial court. See Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996).
“When dividing marital property and determining a party’s need for alimony, a trial court should consider several factors, including ‘ “the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to which the parties have become *1136 accustomed during the marriage.” ’ Ex parte Elliott, 782 So.2d 308 (Ala.2000) (quoting Nowell v. Nowell, 474 So.2d 1128, 1129 (Ala.Civ.App.1985)) (footnote omitted). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility, or where ... the trial court failed to specify the grounds upon which it based its divorce judgment. Ex parte Drummond, 785 So.2d 858 (Ala.2000); Myrick v. Myrick, 714 So.2d 311 (Ala.Civ.App. 1998). It is well-settled that where a trial court does not make specific factual findings, the appellate court must assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. Ex parte Fann, 810 So.2d 631 (Ala.2001); Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996).”
Baggett v. Baggett, 855 So.2d 556, 559-60 (Ala.Civ.App.2003).
After a review of the testimony of the parties on the record and the factors set forth in Ex parte Elliott, 782 So.2d 308 (Ala.2000), we cannot conclude that the trial court exceeded its discretion in dividing the marital property. The parties jointly owned three pieces of property at the time of the hearings: 1) the timeshare, valued at approximately $20,000, was awarded to the wife; 2) the property in Grady, valued at approximately $30,800, was awarded to the husband; and 3) the marital home, valued at $285,000, with a debt of approximately $200,000, was ordered to be sold, with the wife being awarded $56,375.50 from the sale proceeds and the husband being awarded any remaining sale proceeds. The husband was also allowed to keep all the furnishings in the home, and he was awarded the use and enjoyment of the marital home until it was sold.
The wife was awarded the 1994 BMW 318i and the 2002 GMC Yukon Denali, which was subject to a lien incurred so that the parties could pay for the timeshare; the husband was awarded the 1976 Volkswagen, the 1984 Chevy truck, and the 2007 Mercedes. The parties were ordered to pay the debts on the vehicles that they were awarded. The wife was also awarded the Janus fund, which she had opened before the parties were married and which contained a balance of $2,249.05. We cannot conclude that the division of the parties’ property was so inequitable as to exceed the trial court’s discretion.
The award of alimony is likewise dependent on the same factors. See Ex parte Elliott, supra. We note that both parties have a history of health problems but that the husband receives over $4,000 a month in disability benefits. The wife testified that, of her three sources of income, the $3,059.88 she received per month from a consulting contract was due to expire at the end of January 2008, and she was unsure if the contract would be renewed. The wife also described her disability benefits, in the amount of $2,008 per month, as “temporary.”
The trial court was also permitted to take into account “ ‘the conduct of the parties and fault with the regard to the breakdown of the marriage.’” Ex parte Drummond, 785 So.2d 358, 363 (Ala.2000) (quoting Myrick v. Myrick, 714 So.2d 311, 315 (Ala.Civ.App.1998), citing in turn Huntress v. Huntress, 555 So.2d 1103 (Ala.Civ.App.1989)). The evidence established that the husband had filed for divorce twice, once in 2005 and once in 2006, in the midst of the wife’s cancer treatments. The wife testified that the husband had never accompanied her to radiation appointments. Based on the husband’s *1137 monthly disability income, his property award, and his conduct regarding the breakdown of the marriage, we cannot say the trial court exceeded its discretion in declining to award the husband alimony.
IV. The April 23, 2008, Order
After the trial court amended the original divorce judgment on March 26, 2008, the wife filed a second postjudgment motion entitled “Motion to Reconsider Order to Add Provision of Contempt and Motion for Order of Contempt/Sanctions,” on April 10, 2008. The husband alleges that an order dated April 23, 2008, addresses the wife’s second postjudgment motion and that that order is void because it was in response to a successive post-judgment motion seeking reconsideration of the wife’s first Rule 59(e), Ala. R. Civ. P., motion.
The April 23, 2008, order is not in the record. There is a notation on the case-action summary dated April 23, 2008, that shows that the trial court granted the wife’s “motion to reconsider” because the husband had not paid the past-due indebtedness on the mortgage; the trial court further noted that the wife would be reimbursed for any mortgage payments she made on the marital residence in addition to her property award from the divorce judgment.
The wife’s first postjudgment motion, made pursuant to Rule 59(e), Ala. R. Civ. P., requested an amendment to the original divorce judgment as it pertained to the marital residence. In that motion the wife stated:
“The former husband testified at final hearing that he ‘intentionally’ did not make payments toward the [mortgage on the marital residence]. This same action has damaged both parties!’] credit. The former wife has great concern that the former husband “will not’ or ‘cannot’ refinance the same residence. Therefore, she would request that the court allow her to ‘File a motion’ (after the 100 days that is allowed to the former husband) asking the court to ‘Revisit’ this provision and order that the residence be sold if the former husband does not comply with the court’s order.”
In the amended divorce judgment, the trial court accelerated the relief the wife had requested and immediately ordered the sale of the marital residence, as opposed to giving the husband 100 days to refinance the marital residence.
The wife then filed a second post-judgment motion, just 15 days after the trial court had amended the divorce judgment, asking the trial court to issue an order of contempt against the husband, to order his incarceration, to order that the wife be allowed to take possession of the marital residence to prepare the house for sale, and to order that the wife be reimbursed for any mortgage payments she would be required to make to keep the house out of foreclosure. In support of this motion, the wife alleged that the husband had failed to pay the mortgage on the marital residence and that the mortgage payments were $2,800 in arrears. The wife further alleged that her counsel had suggested two realtors to assist the parties in the sale of the marital residence but that the husband had not agreed to list the residence with either realtor. The wife also expressed her fear that the husband would not make any further mortgage payments and would allow the marital residence to go into foreclosure, thus causing the equity in the home to be lost.
This court has held that “[successive post-judgment motions by the same party, seeking essentially the same relief, are not allowed.” Gold Kist, Inc. v. Griffin, 659 So.2d 626, 627 (Ala.Civ.App.1994) (citing Ex parte Dowling, 477 So.2d 400 (Ala.1985)).
*1138 In Ex parte Dowling, 477 So.2d at 404, our supreme court held that
“the Rules of Civil Procedure do not authorize a movant to file a motion to reconsider the trial judge’s ruling on his own post-judgment motion. However, in some cases such successive post-judgment motions may be permitted. If, for example, the judge has rendered a new judgment pursuant to a Rule 59(e)[, Ala. R. Civ. P.,] motion to alter, amend, or vacate a judgment ..., the party aggrieved by the new judgment may have had no reason to make such a motion earlier.”
We conclude that the trial court did not have jurisdiction to consider the wife’s successive postjudgment motion because the divorce judgment, as amended in response to the wife’s first Rule 59(e) motion, did not aggrieve the wife in such a way as contemplated by Ex parte Dowling. The wife could have sought the relief she requested in the second postjudgment motion when she filed her first postjudgment motion. The granting of the wife’s first postjudgment motion by the trial court did not aggrieve the wife.
In her brief to this court, the wife stated that she sought “an amendment of the amended judgment, which specifically ordered the husband to be responsible for payment of the debt associated with the marital residence, to permit her to make those payments so as to prevent a foreclosure.” The wife also acknowledged in her second postjudgment motion that, at the time of the hearing on her first post-judgment motion, she was aware that the husband had not made the mortgage payments on the marital residence and that the marital residence was at risk of foreclosure. Based on the wife’s knowledge of those facts, the wife could have sought the relief she requested in her second post-judgment motion in her first postjudgment motion. Nothing in the trial court’s amended divorce judgment aggrieved the wife to such an extent that would permit her to file a successive postjudgment motion.[6]
“ ‘[A] judgment entered without subject-matter jurisdiction is void, ... and ... a void judgment will not support an appeal.’ ” T.B. v. T.H., [Ms. 2071009, April 17, 2009] — So.3d -, - (Ala.Civ. App.2009) (quoting K.R. v. D.H., 988 So.2d 1050, 1052 (Ala.Civ.App.2008)). Therefore, we dismiss this portion of the husband’s appeal, and we remand the case with instructions to the trial court to vacate the April 23, 2008, order.
V. October 20, 2008, Order
On September 22, 2008, the wife requested an emergency hearing because the marital residence was in foreclosure and the arrearage for the mortgage on the residence was “over $7,000 plus attorneys fees and costs.” The record does not contain an order of the trial court responding to the wife’s petition, but the case-action summary notes that the trial court entered an “ex parte order to evict” on October 20, 2008. The wife states in her brief to this court that the October 20, 2008, order is from a separate contempt action filed by *1139 the wife, that the entry in the case-action summary for case no. DR-06-150 referring to the contempt action was a mistake by the trial court, and that the contempt action was given a separate case number on the Elmore Circuit Court’s docket. See Decker v. Decker, 984 So.2d 1216, 1220 (Ala.Civ.App.2007) (“[W]hen a party files a contempt motion alleging a violation of the provision of a previously entered final divorce judgment, that contempt proceeding is separate and independent from the action in which the divorce judgment was entered and does not affect the finality of the divorce judgment.”).
The husband argues that the October 20, 2008, order is void because wife failed to pay the required filing fee when she filed her petition for an emergency hearing. See Farmer v. Farmer, 842 So.2d 679, 681 (Ala.Civ.App.2002) (“The failure to pay the filing or docketing fee is a jurisdictional defect.”). However, we note that the husband filed his notice of appeal in civil action number DR-06-150 to this court on April 25, 2008, approximately six months before the trial court issued the October 20, 2008, order. To our knowledge, the husband did not file a separate notice of appeal in the wife’s separate contempt action, nor did he petition this court to consolidate the appeal of this case and any appeal in the contempt action. Therefore, we do not have jurisdiction to review the trial court’s October 20, 2008, order from the separate contempt action. See Rule 3(a)(1), Ala. R.App. P. (“In civil cases, an appeal permitted by law as of right shall be taken to an appellate court by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4[, Ala. R.App. P.]”). See also § 12-22-2, Ala.Code 1975 (“From any final judgment of the circuit court ..., an appeal lies to the appropriate appellate court as a matter of right by either party ..., within the time and in the manner prescribed by the Alabama Rules of Appellate Procedure.”).
APPEAL DISMISSED IN PART; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
THOMAS, J., recuses herself.

. The husband had previously filed for divorce in 2005, but the parties reconciled and that petition was dismissed.

. The trial court's pendente lite order awarding physical custody of the son to the wife did not award any visitation to the husband. However, the record reflects that the husband did exercise visitation with the son through October 2007.

. The first hearing was held on August 9, 2007, and the second hearing was held on January 10, 2008.

. The April 23, 2008, order, and the October 20, 2008, order are not included in the record on appeal.

. The wife’s 20-year-old son was from a previous relationship.

. We note that although the wife's second postjudgment motion is styled as a "Motion to Reconsider Order to Add Provision of Contempt," the trial court did not treat the wife's motion as a separate contempt action, which requires a separate filing fee. See Decker v. Decker, 984 So.2d 1216, 1220 (Ala.Civ.App.2007). Instead, the trial court treated the wife's motion as a successive postjudgment motion by purporting to amend the amended divorce judgment. There is no law that forbids the wife from filing a separate contempt action against the husband to seek the relief she requested in her second postjudgment motion.