Debbie D. Fann (the "mother") appealed to the Court of Civil Appeals from a divorce judgment in which the trial court awarded custody of the parties' children to her former husband, Robert P. Fann (the "father"). On May 26, 2000, the Court of Civil Appeals affirmed the trial court's judgment, without an opinion. Fann v. Fann (No. 2990055), 795 So.2d 849
(Ala.Civ.App. 2000) (table). We granted the mother's petition for certiorari review. We affirm.
 I.
The mother and father married in December 1991. Their marriage produced two children, one in 1992 and the other in 1993. In 1998, the husband filed a divorce complaint in the Shelby Circuit Court. The mother filed a counterclaim, also asking for a divorce. Each party requested custody of the children. During the pendency of the divorce proceedings, the mother, alleging that the father had abused her, moved for a temporary restraining order against him. In response, the trial court appointed a special master, G. Daniel Reeves, to hear and investigate the allegations against the father. After conducting a pendente lite hearing on the matter, the special master issued a report stating, in pertinent part: "The court did not find sufficient evidence to indicate that the [father] was abusive to the [mother]." On January 7, 1999, the trial court adopted the special master's findings.
Before the trial of this divorce action, Reeves was elected as a judge of the Shelby Circuit Court; the Fanns' divorce case was subsequently assigned to Judge Reeves. At trial, the mother again alleged that the father had abused her during their marriage. During cross-examination, she apparently added another claim of abuse, based on an incident she said had occurred in or after January 1999, a date subsequent to the conclusion of the pendente lite hearing. The father, at trial, specifically denied at least some of the allegations and testified, at length, that the mother had frequently abused alcohol; as to that testimony, he presented corroborating evidence. In July 1999, the trial court entered a judgment divorcing the parties; the judgment awarded the care and custody of the children to the father, with visitation rights to the mother. The court made no specific findings regarding the mother's renewed allegations of abuse.
In her certiorari petition, the mother argued that the Court of Civil Appeals' affirmance of the trial court's decision conflicts with its prior ruling in Fesmire v. Fesmire, 738 So.2d 1284 (Ala.Civ.App. 1999). InFesmire, the Court of Civil Appeals stated that if allegations of domestic abuse have been made, then "the trial court must, on the basis of the evidence presented, make a finding on the record as to whetherdomestic abuse occurred and then . . . it must apply the remaining provisions of the Custody and Domestic or Family Abuse Act." 738 So.2d at 1288 (emphasis added). The Court of Civil Appeals ruled that the failure to make such a finding is reversible error. Id. The mother argues that because the trial court failed to make this specific finding in its final divorce judgment, that judgment must be reversed.
 II.
Before we begin our analysis, we first consider the applicable standards of *Page 633 
review. When this Court reviews a trial court's child-custody determination that was based upon evidence presented ore tenus, we presume the trial court's decision is correct: "`A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong. . . .'" Exparte Perkins, 646 So.2d 46, 47 (Ala. 1994), quoting Phillips v.Phillips, 622 So.2d 410, 412 (Ala.Civ.App. 1993) (citations omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. "In child custody cases especially, the perception of an attentive trial judge is of great importance." Williams v. Williams,402 So.2d 1029, 1032 (Ala.Civ.App. 1981). In regard to custody determinations, this Court has also stated: "It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." Ex parteBryowsky, 676 So.2d 1322, 1324 (Ala. 1996).
Because we are called upon to review a trial court's judgment in light of the Custody and Domestic or Family Abuse Act (the "Act"), the following standard is also germane:
 "Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction . . . ."
IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992). We begin our review with these established standards in mind.
 III.
In 1999, pursuant to the Act, and mindful of the serious nature of domestic and family abuse, the Court of Civil Appeals began requiring that a trial court hearing a child-custody case make a specific finding related to a claim of abuse. See Fesmire v. Fesmire, supra. Since that time, the Court of Civil Appeals has consistently reversed trial courts' custody determinations for a failure to make such a finding. See, e.g.,Jordan v. Jordan, 802 So.2d 238 (Ala.Civ.App. 2001); King v.King, 794 So.2d 1165 (Ala.Civ.App. 2001).
In crafting the Fesmire "requirement," the Court of Civil Appeals stated that it was predicating its ruling upon the language of the Act[1]
and upon its prior ruling in Harbert v. Harbert, 721 So.2d 224, 226
(Ala.Civ.App. 1998).[2] However, the Act contains no provision requiring a trial court to make an express finding as to whether abuse has occurred, a fact Fesmire concedes: "[T]he [Act] does not directly mandate that the trial court make a finding regarding allegations of domestic abuse . . . ." 738 So.2d at 1287. Despite this concession, the Court of Civil Appeals reasoned that "the import of the [Act] *Page 634 
allows for such an interpretation." 738 So.2d at 1287. We conclude that this "interpretation" is incorrect.
This Court has repeatedly held that a statute is to be construed by the plain meaning of its words:
 "Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction . . . ."
IMED Corp., supra, 602 So.2d at 346. As Justice Houston has stated: "[T]his Court must interpret [a] statute strictly according to the language of that statute . . ., and to do otherwise would `turn this Court into a legislative body . . . .'" Johnson v. Price, 743 So.2d 436,438 (Ala. 1999) (citations omitted).
Because the Act provides no basis for Fesmire's "requirement," we turn our review to Harbert, in which the Court of Civil Appeals remanded the case for the trial court to determine whether domestic abuse had occurred. 721 So.2d 224. A review of Harbert demonstrates that the Court of Civil Appeals' reliance upon that case is misplaced. In fact, theFesmire opinion recognized that "Harbert did not hold that the Custody and Domestic or Family Abuse Act requires the trial court to make a finding as to whether domestic abuse has occurred." 738 So.2d at 1286. Rather, the Court of Civil Appeals' "decision [in Harbert] to instruct the trial court on remand to make a finding was influenced by [a] concern that an appellate court could not be certain that the trial court had applied the statute without some indication that the trial court made a finding about the domestic-abuse issue." 738 So.2d at 1285-86.
As admitted by the Court of Civil Appeals, "requirement" finds itsauthorization in the practicality of appellate review. "[S]uch aninterpretation is necessary for this court to adequately review theapplication of the statute." Fesmire, 738 So.2d at 1287. While the practicality of appellate review is a legitimate concern, it does not here justify the judicial creation of an unsanctioned requirement. Furthermore, to impose the harsh results — an automatic reversal — that has been occurring since Fesmire was decided seems unwarranted. Clearly, no provision in the Act calls for the wholesalereversal of child-custody decisions, even if it is presumed that the Act calls for specific findings. In A.S. v. G.T., 794 So.2d 1167 (Ala.Civ.App. 2001), the trial court, addressing the mother's allegations of abuse, stated: "I am totally convinced that [the mother] stays up all hours of the night writing and generating papers, because I get to look at the papers, though I do not find much substance to them." Nevertheless, the Court of Civil Appeals reversed the trial court's award of child custody to the father and remanded the case to the trial court "to enter a judgment containing a finding as to whether the alleged domestic or family abuse occurred." 794 So.2d at 1169. The Court of Civil Appeals stated: "The failure to make such a finding [as to whether abuse occurred] is reversible error." 794 So.2d at 1169. This result is neither authorized nor, as demonstrated hereafter, universally warranted.
For example, in Howard v. Howard, 796 So.2d 373 (Ala.Civ.App. 2001), the Court of Civil Appeals held that the failure to make written findings as to whether domestic abuse had occurred was a harmless error and upheld the trial court's custody award. In fact, in this present case the trial court did not make specific findings as to at least *Page 635 
some of the mother's allegations at trial; yet, the Court of Civil Appeals affirmed the trial court's judgment, without opinion.
More troubling, perhaps, is the fact that this "requirement" has subsequently taken "a life of its own." Since it was first written in 1999, the Fesmire opinion has been cited to advocate or support reversal of a trial court's order and a remand where no allegations of domestic abuse had been made by the parties, Stagliano v. Stagliano,799 So.2d 202 (Ala.Civ.App. 2001) (Crawley, J., dissenting),[3]
and again where the parties had made no objections — either before the trial court or before the Court of Civil Appeals — related to the Act. Stevens v. Everett, 784 So.2d 1054 (Ala.Civ.App. 2000) (Judge Robertson dissented, criticizing the majority for pursuing "asua sponte search for error [in violation of] the fundamental precepts of appellate procedure," 784 So.2d at 1056).
Moreover, to judicially impose specific requirements for one kind of conduct while judicially exempting other kinds is necessarily arbitrary and capricious. To illustrate, the Act proscribes certain kinds of conduct that if alleged would, under Fesmire, require the court to make specific factual findings. For instance, the Act defines "domestic or family abuse" to include: (1) "abuse," as defined in § 13A-6-60 et seq. and § 26-15-1 et seq., i.e., sexual abuse and willful child abuse; (2) "stalking," as defined in §§ 13A-6-90 to 13A-6-92; (3) "assault," as defined in §§ 13A-6-20 to 13A-6-25; and (4) "harassment," as defined in § 13A-11-8. Nevertheless, the following would apparently not, according to the Act, constitute "domestic or family abuse": kidnapping; child neglect (which is "[h]arm to a child's health or welfare by a person responsible for the child's health or welfare which occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care," §26-16-2, Ala. Code 1975); open drug and alcohol abuse; open adultery or promiscuity; and the lack of mental stability.
Thus, if a parent had been accused of kidnapping, Fesmire would arguably not require specific factual findings on that accusation. If a parent had been accused of openly engaging in prostitution, Fesmire would not require specific factual findings. If a parent was shown to be mentally unstable and that parent refused to take prescribed medication, thereby potentially endangering the welfare of his or her child, Fesmire
would not require specific factual findings. If a parent continually failed to provide adequate food, clothing, shelter, or medical care,Fesmire would not require specific factual findings. However, should one parent, at any time during their marriage, make an obscene gesture or statement to the other, and this fact is alleged during a child-custody hearing, then the trial court, pursuant to Fesmire, must make specific factual findings — because "harassment" includes "abusive or obscene language" or "obscene gestures" directed toward another person. § 13A-11-8(a)(1)b. This illustration raises the question: Which is the more detrimental for a child, an isolated and perhaps unobserved "obscene gesture" directed by one parent to the other — in which case Fesmire would require a trial court to make specific factual findings — or a parent's continual failure to provide a child adequate food, clothing, shelter, or medical care — in which caseFesmire would not require specific factual findings. The "harassment" may not, even indirectly, affect *Page 636 
the child in any way, while the child neglect certainly — directly and fundamentally — undermines the child's most basic sense of well-being. The answer is clear. The Fesmire requirement, however well-intentioned, cannot stand.
While we believe that it would be the better practice for the trial court to state in its judgment the reasons and findings supporting its conclusions, nothing in the Act requires it to do so. As Justice Lyons, in writing for a unanimous Court, recently stated: "The Legislature, by enacting § 30-3-152(c), has demonstrated an ability to require a statement of reasons, and by enacting that statute it has done so in a situation not here presented. We must conclude that if the Legislature had intended to require the trial court to state its reasons in other situations, it would have done so." Ex parte Byars, 794 So.2d 345
(Ala. 2001). See Hagood v. State, 777 So.2d 221 (Ala.Crim.App. 2000) (remand required for the trial court to enter express findings where the controlling statute, § 13A-5-47, Ala. Code 1975, stated that "the trial court shall enter specific written findings"); § 26-10A-23(b), Ala. Code 1975 ("The court shall approve all reasonable fees and expenses unless determined by the court to be unreasonable based upon specific written findings of fact."); §30-3-4.1(e), Ala. Code 1975 ("The court shall make specific written findings of fact [concerning grandparent visitation] in support of its rulings."). Here, however, no authority supports the proposition that "the trial court must . . . make a finding on the record as to whether domestic abuse occurred," Fesmire, 738 So.2d at 1288, or that "[t]he failure to make such a finding is reversible error." A.S. v. G.T., supra, 794 So.2d at 1169. To require that finding when the statute would not is to judicially rewrite the law and to place a burden upon the trial court that the statute does not impose.
The well-established law in Alabama remains: "[W]here a trial court does not make specific findings of fact concerning an issue, this Court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." Lemon v.Golf Terrace Owners Ass'n, 611 So.2d 263, 265 (Ala. 1992). See W.D.Williams, Inc. v. Ivey, 777 So.2d 94, 98 (Ala. 2000); Ex parte Patronas,693 So.2d 473, 475 (Ala. 1997); Ex parte Bryowsky, 676 So.2d at 1324;Jantronic Systems, Inc. v. Brock, 646 So.2d 1337, 1337 (Ala. 1994); Meeksv. Hill, 557 So.2d 1238, 1240 (Ala. 1990); May v. Campbell, 470 So.2d 1188,1190 (Ala. 1985); Hand v. Stanard, 392 So.2d 1157, 1159 (Ala. 1980). Moreover, "[b]ecause the trial court has the advantage of observing the witnesses' demeanor and has a superior opportunity to assess their credibility, this Court cannot alter the trial court's judgment unless it is so unsupported by the evidence as to be clearly and palpably wrong."Ex parte D.W.W., 717 So.2d 793, 795 (Ala. 1998) (emphasis added).Fesmire, supra, and its progeny clearly violate this long-standing principle.
Here, the record indicates that before presenting testimony at the trial, the father's attorney stated: "Your Honor, just for the record, the Court has indicated that we will consider the testimony that was taken at the previous [pendente lite] hearing in this matter back in December in support of the case in chief. So, there will be no need to repeat that; is that correct?" The court replied, "That is correct. And I have maintained notes in regard to that testimony." The mother's attorneys neither objected to, nor contested, this course of conduct. The court then heard extensive testimony from the parents, character witnesses, and expert witnesses, much of which was disputed, concerning the parents' caregiving abilities and lifestyles. *Page 637 
Moreover, the trial judge, in his prior capacity as special master, had already issued an order specifically finding the mother's allegations of abuse to be without evidentiary support. As demonstrated, the record indicates that the trial court was aware of the prior proceedings and recalled them specifically.
The record further indicates that the father, when questioned by the mother's attorney, again denied her specific allegations of abuse:
"Q. You have a violent temper, don't you?
"A. No, sir.
 "Q. You have attempted to run [the mother] off the road, haven't you?
"A. No, sir.
"Q. Just recently, since January of this year?
"A. No, sir."
At this point, the father's attorney objected, and the mother's attorney voluntarily ceased his cross-examination on this topic.
While the mother made a subsequent and additional allegation of abuse, the context of her accusation is noteworthy. First, the mother did not allege this subsequent event during her initial direct examination. Second, the mother made this accusation, in passing, in response to questioning regarding her unauthorized — and allegedly drunken — visitation of the children on a specific evening. Additionally, the questions that followed clearly indicated that the father's version of the episode was markedly different:
 "Q. So, you've already told us that you deny having anything of an alcoholic nature on the 10th or the 11th of April?
"A. [The mother:] That's correct. Or any other time.
 "Q. Do you recall an incident in January at the Skate Time [roller rink] between you and [the father]?
"A. Yes, sir, I do.
"Q. And what happened on that occasion?
 "A. I had gone by the Odyssey Day Care to visit my children and they told me that they were having [a roller-skating party] that night and they invited me to come. I was living in the basement with a friend, [who] lived very close to the skating rink. And the children asked me to come and said that it started at 6:00. So, I went and rented a pair of roller blades and it was some 45, 50 minutes before they got there.
 "Q. Now this was an occasion when [the father] was to have those children with him during a two-week interval; is that correct?
"A. That's correct.
 "Q. And [the father] did not invite you to come to [the skating party] and infringe on his time with the children on that occasion, did he?
"A. No, sir, the children did.
 "Q. Yes. But you didn't tell [the father] in advance you were coming, did you?
"A. No, sir, I did not.
 "Q. You just showed up. And you'd been drinking on that occasion, hadn't you?
 "A. I had not been drinking on that occasion. But I was accused of drinking on that occasion.
 "Q. That's because you became loud and boisterous and created a scene on that occasion in front of the children, didn't you?
 "A. [The father] grabbed me at the skating rink and I told him over *Page 638 
and over during this abusive relationship that I do not want him to lay his hands on me again. He grabbed me, jerked me around in front of my two children, called me [a derogatory name], told me that I did not care a . . . thing —
 "Q. Mrs. Fann, isn't it a fact that the reason he grabbed you is because you were so drunk on the skates you couldn't stand up and he had to catch you from falling?"
At this point, the mother again denied using alcohol; the father's attorney resumed his line of questioning regarding the mother's alleged alcoholic tendencies.
Evidence in the record supports the father's contention that the mother abused alcohol. On one occasion, the children were unable to awaken the mother from sleep. The children telephoned their father, who called paramedics to the scene; the paramedics, only after several minutes of repeated attempts, were able to awaken the mother. The mother, who was subject to a court order directing her not to consume alcoholic beverages and who was at that time being screened for alcohol use, further admitted — on a tape recording — that she knew how to "manipulate" her alcohol screens. At trial, she said that this admission was made "in jest" and that she had never manipulated the alcohol screenings. On a separate occasion, a physician indicated that the mother smelled of alcohol on her emergency admission to a local hospital. At trial, the mother denied that she had been drinking on that occasion and stated: "I had candy in my mouth and I smelled highly of chemicals [`weed and feed' fertilizer] and that was sheer speculation on [the physician's] part. . . ." More germane to the current issue, the mother's allegations of abuse ceased.[4]
We do not recite these facts to reach or justify any conclusion; rather this contested evidence, taken in context, exemplifies the reason for the ore tenus presumption, "that is, that the trial court is in the . . . position of discerning the demeanor and other like intangibles which do not transfer so readily in a transcript." Shepherd v. Shepherd,531 So.2d 668, 671 (Ala.Civ.App. 1988). Stated another way, "the deference given to the trial court by the ore tenus rule is, in part, due to the trial court's unique position to see and/or hear something that may not be apparent on the face of the written record." Willing v.Willing, 655 So.2d 1064, 1068 (Ala.Civ.App. 1995). See Dobbins v.Dobbins, 602 So.2d 900, 901 (Ala.Civ.App. 1992) ("The reason for the ore tenus rule is [well established], i.e., that the trial court had the opportunity to observe the witnesses as they testified, to judge their credibility and demeanor, and to observe what this court cannot perceive from a written record.").
Rarely do judicial opinions adequately communicate their intentions. Even more rarely do judicial opinions clearly inform the reader as to what they do not mean. This opinion should not be construed to limit the courts — trial and appellate — in the review of cases before them. It is the court's duty to scrupulously guard and protect the interests of children. And in the context of child-custody proceedings, the dominant consideration is always the best interest of the child. Exparte Johnson, 673 So.2d 410, 413 (Ala. 1994). However, to the extentFesmire, supra, and cases following it require a trial judge, without exception, once an allegation of abuse has been made, to make a finding on the record as to whether "domestic abuse" has in fact occurred, they are in error and are hereby overruled. *Page 639 
The Act makes no such requirement, and the rulings of the Court of Civil Appeals imposing such a requirement are incorrect.
Because the record shows that the trial court's custody ruling is not plainly or palpably wrong, the judgment of the Court of Civil Appeals affirming the trial court's judgment is affirmed.
AFFIRMED.
Houston, See, Lyons, Brown, Johnstone, Harwood, and Stuart, JJ., concur.
Woodall, J., concurs in the result.
[1] The Custody and Domestic or Family Abuse Act is codified at §30-3-130 et seq., Ala. Code 1975.
[2] The Fesmire opinion, authored by Judge Crawley, was joined only by Judge Thompson. Judge Yates concurred in the result, and Presiding Judge Robertson and Judge Monroe concurred "in the result only." Nevertheless, the Court of Civil Appeals has frequently cited the language of theFesmire opinion to justify not only remand orders, but the wholesale reversal of trial courts' custody rulings.
[3] While the parties in Stagliano had not alleged domestic abuse, the record indicated a possibility that abuse had occurred. Nevertheless, the record clearly shows that the trial court was aware of this possibility and took it into consideration.
[4] The mother later testified on redirect examination to the same sequence of events.