Rel: March 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

_____

## CL-2022-0676 and CL-2022-0677

_____

## M.A.

### v.

## C.S. and A.S.

### Appeals from Lee Juvenile Court
### (JU-20-227.01 and JU-20-227.02)

PER CURIAM.

In these consolidated appeals, M.A. ("the father"), the father of B.A. ("the child"), appeals from identical judgments that the Lee Juvenile Court ("the juvenile court") entered in each of two dependency actions pertaining to the child. Those judgments vested the father with custody

of the child but found that the child remained dependent as to the father and granted C.S. and A.S. ("the maternal grandparents"), the child's maternal grandparents, visitation with the child. On appeal, the father challenges the juvenile court's judgments insofar as they found that the child remained dependent as to the father and granted the maternal grandparents visitation with the child. Because we conclude that the juvenile court could not reasonably have been clearly convinced from the evidence that the child remained dependent as to the father when it entered its final judgments, we dismiss the appeals with instructions to the juvenile court to vacate its judgments, to dismiss the actions in which it entered the judgments, and to allow custody of the child to be returned to the father.

Background

T.S. ("the mother"), the child's mother, is deceased. Before her death, the mother and the father were in a romantic relationship and lived together but were never married. The child was born in November 2018. After the child's birth, the child was in the custody of the mother and the father until the mother's death in August 2020.

In May 2020, the father was hospitalized because of a drug overdose. Subsequently, in July 2020, the father was hospitalized a second time because of a drug overdose. During this second hospital stay, the father's physicians discovered that he had a brain lesion. On August 29, 2020, while the father was still hospitalized, the mother used illicit drugs and died as a result. When the father had recovered from his second drug overdose, he underwent successful surgery to remove the brain lesion.

In September 2020, the maternal grandparents filed a dependency petition regarding the child in the juvenile court. In their petition, they alleged that the child was dependent because, they said, the mother had died and the father was unable to discharge his parental responsibilities. The maternal grandparents' petition sought custody of the child if the juvenile court found that the child was dependent but did not seek visitation if the juvenile court did not find the child dependent. A few days after the maternal grandparents filed their petition, E.A. ("the paternal grandmother"), the father's mother and the paternal grandmother of the children, also filed a dependency petition regarding the child in the juvenile court. The juvenile court assigned the maternal

grandparents' action ("the .01 action") a .01 designator and assigned the paternal grandmother's action ("the .02 action") a .02 designator.

The juvenile court ordered the father and the child to submit to DNA testing, and the results of the DNA testing confirmed that the father is the child's father. On September 29, 2020, the juvenile court held a hearing regarding both the maternal grandparents' petition and the paternal grandmother's petition. On September 30, 2020, the juvenile court entered identical orders in both the .01 action and the .02 action. Those September 30, 2020, orders stated that the father had agreed at the hearing that the child was dependent, granted the maternal grandparents pendente lite custody of the child, granted the father supervised visitation, and required the father to satisfy the requirements of a to-do list that was attached to the order. The to-do list attached to the September 30, 2020, order required the father to refrain from using drugs and alcohol; to submit to hair-follicle drug testing before modification of the September 30, 2020, order; to submit to a substance-abuse assessment as soon as possible; to follow the recommendations made in the substance-abuse assessment; to obtain and maintain stable housing; to obtain and maintain stable employment; to submit to a

4

mental-health assessment as soon as possible; and to comply with the recommendations made in the mental-health assessment.

On October 19, 2020, the East Alabama Mental Health Center performed a substance-abuse assessment and a mental-health assessment on the father. The substance-abuse assessment recommended that the father receive substance-abuse treatment. The father subsequently completed an outpatient substance-abuse-treatment program on April 8, 2021. The mental-health assessment did not diagnose the father as suffering from a mental illness; however, he voluntarily participated in individual counseling and followed a physician's suggestion that he take buspirone and citalopram for anxiety and depression. He testified that he was not receiving counseling for anxiety and depression. He said that he was in a good mood most of the time.

The father submitted to hair-follicle drug tests in December 2020, April 2021, June 2021, and March 2022. The results of all his drug tests were negative for the presence of illicit drugs.

After the father recovered from the surgery to remove his brain lesion, he obtained and maintained employment. When the juvenile court

held the final dispositional hearing, the father had been working for the same employer for five months.

When the hospital discharged him following his brain surgery, the father initially lived with the paternal grandmother, her husband, and the father's brother; however, two months before the final dispositional hearing, the father rented and moved into his own three-bedroom, two-bathroom house ("the rental house").

Following a review hearing, the juvenile court, on June 29, 2021, entered identical orders in both the .01 action and the .02 action that granted the father unsupervised visitation with the child and ordered him to pay the maternal grandparents child support in the amount of $359 per month.

On March 30, 2022, the juvenile court held a final dispositional hearing. At that hearing, the father testified that he had satisfied all the requirements listed on the to-do list attached to the juvenile court's September 30, 2020, order. He testified that he had most recently submitted to a hair-follicle drug test on March 16, 2022, two weeks before the final dispositional hearing and that the result of that test indicated

6

that he did not have any illicit drugs in his system. He introduced the written March 16, 2022, drug-test result into evidence.

The father testified that he was the only occupant of the rental house except when the child stayed there during visits. Both the father and the paternal grandmother testified that the paternal grandmother had cosigned the lease with the father but that she did not provide him with any financial assistance. The father testified that the child has his own bedroom and his own bathroom in the rental house. He introduced photographs of the interior and exterior of the rental house. The photographs depict a house that would be suitable for the child to live in. The father testified that the exterior of the rental house is brick, that the rental house has a fenced-in backyard, that it is in a good neighborhood, and that a park, a playground, and baseball fields were within walking distance of the rental house.

The father testified that his income from his employment was sufficient to pay his and the child's living expenses. The father admitted that he and the mother had been substance abusers when the maternal grandparents filed their dependency petition, but he said that he had refrained from using drugs or alcohol since July 2020, that he had

7

changed for the better since then, and that he had become a different person. He further said that he wanted to be the best father to the child that he could be and that he would never engage in substance abuse again.

The paternal grandmother testified that she did not have any concerns about the father's ability to care for the child independently. She testified that, in her opinion, the father was doing well both mentally and emotionally. She said that the father has been sober for a significant period and that his behavior has improved substantially since he has been sober. She said that he no longer drinks any alcohol of any kind, that he no longer has any contact with the people he knew who were using illicit drugs, and that his life now consists of going to work, going to the grocery store, going to the gym, and going home.

The father testified that he and the maternal grandparents are civil to each other but that he does not trust them. He said that they have repeatedly asked him to discuss the circumstances of the mother's death and that he has declined to do so. He said that the maternal grandparents had refused to allow the child to visit him at any time that was not specified in his visitation schedule. On Halloween, the father asked the

8

maternal grandfather to allow the father to take the child trick-or-treating, but the maternal grandfather refused. The father asked if he could accompany the maternal grandparents and the child when they took him trick-or-treating, but the maternal grandfather told him that he could not.

The father testified that, if the juvenile court vested him with custody following the final dispositional hearing, he would want the maternal grandparents to have continued contact with the child but that he did not want them to have the same rights as a parent.

The father testified that, as a precaution against relapsing into substance abuse, he had terminated all contact with anyone that he knew who was using drugs. He said that he deals with stress by exercising at a gym and by talking about his problems with his family, who constitute his support group. The father testified that the mother's death because of drugs and his own overdoses had scared him so badly that he would never again use illicit drugs.

The maternal grandfather testified that the child was "doing great." The maternal grandfather confirmed that he had not allowed the father to have any time with the child that was not specified in the visitation

order. He said that he did not think that it was in the child's best interests to spend more time with the father. The maternal grandfather testified that he thought it was too soon for the juvenile court to transfer custody of the child to the father because, the maternal grandfather said, he did not think that the father had demonstrated that he had changed for a long enough period. The maternal grandfather testified that he had not received any counseling regarding the mother's death because, he said, he did not think he needed any.

After the parties rested at the final dispositional hearing, the juvenile court asked the guardian ad litem if he had a recommendation. The guardian ad litem stated that, in his opinion, the father had demonstrated for a substantial period that he could maintain sobriety and stability and that the juvenile court should transfer custody of the child to the father and grant visitation to the maternal grandparents.

On April 11, 2022, the juvenile court entered identical judgments in both the .01 action and the .02 action. In pertinent part, those judgments stated that "while the child remains dependent until further observation can occur, the Court can no longer say that this child needs to remain removed from his father"; vested the father with sole legal and

10

physical custody of the child; and granted the maternal grandparents visitation with the child.

On April 25, 2022, the father filed identical postjudgment motions in both the .01 action and the .02 action. Those postjudgment motions asserted that the juvenile court should alter, amend, or vacate the judgments for three reasons. First, the father asserted that the juvenile court should alter, amend, or vacate the judgments insofar as they found that the child remained dependent because, the father said, no evidence indicated that the child remained dependent. Second, the father asserted that the juvenile court should alter, amend, or vacate the judgments insofar as they granted the maternal grandparents visitation because, he said, they had not made a claim for visitation with the child. Third, he asserted that the juvenile court should alter, amend, or vacate the judgments insofar as they contained clerical errors.

On April 26, 2022, the maternal grandparents filed postjudgment motions.[1] In their motions, the maternal grandparents asserted that the juvenile court should vacate the judgment insofar as it vested the father

---

[1]The maternal grandparents had until April 26, 2022, to file their postjudgment motions because April 25, 2022, the fourteenth day after the entry of the final judgment, was a State holiday.

with sole legal and physical custody because, they said, the father had lived in his own house for only two months and because, they said, the only treatment the father had received for his substance-abuse and mental-health problems was a few teleconference visits with East Alabama Mental Health Center regarding his substance-abuse problem. In the alternative, the maternal grandparents asserted that the juvenile court should amend the judgments to vest the father and the maternal grandparents with joint legal and joint physical custody of the child, to correct clerical errors in the judgments, and to state that the times specified in the judgments were eastern time.

On April 28, 2022, the juvenile court entered orders granting the father's and the maternal grandparents' postjudgment motions in part and denying them in part. On May 6, 2022, the juvenile court entered an amended judgment in the .01 action only. The amended judgment corrected the clerical errors in the original judgment and specified that the times in the amended judgment were eastern time but made no other changes to the original judgment.

On May 20, 2022, the father filed postjudgment motions in both the .01 action and the .02 action that challenged the May 6, 2022, amended

judgment insofar as it granted visitation to the maternal grandparents. Also on May 20, 2022, the father filed notices of appeal in both the .01 and the .02 actions; however, Rule 4(a)(5), Ala. R. App. P., suspended the operative effect of those notices because the father's May 20, 2022, postjudgment motions remained pending. On May 25, 2022, the juvenile court entered in the .02 action the same amended judgment that it had entered in the .01 action. The juvenile court did not rule on the father's May 20, 2022, postjudgment motions within fourteen days after he filed them; consequently, they were denied by operation of law. See Rule 1(B), Ala. R. Juv. P. Thereafter, the father's notices of appeal became operative pursuant to Rule 4(a)(5).

## Standard of Review

In a dependency case in which the juvenile court has received evidence ore tenus, an appellate court presumes that the juvenile court's factual findings are correct. See J.C. v. Houston Cnty. Dep't of Hum. Res., 313 So. 3d 1137, 1139 (Ala. Civ. App. 2020). This is so because the juvenile court, unlike an appellate court, can directly observe the witnesses and assess their demeanor and credibility. Id.

Clear and convincing evidence must support a finding of dependency. Id. Clear and convincing evidence is evidence that, "when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." § 6-11-20(b)(4), Ala. Code 1975. "Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt." Id. An appellate court does not reweigh the evidence but, rather, determines whether the juvenile court's findings of fact are supported by evidence that the juvenile court reasonably could have found to be clear and convincing. See K.S.B. v. M.C.B., 219 So. 3d 650, 653 (Ala. Civ. App. 2016).

## Analysis

The father first argues that the maternal grandparents did not prove by clear and convincing evidence that the child remained dependent at the time of the custody disposition and that, therefore, the juvenile court lacked jurisdiction to do anything other than to dismiss the

14

dependency actions pertaining to the child and to allow the custody of the child to be returned to the father. We agree.

A juvenile court may either hold its adjudicatory and dispositional hearings on the same date or it may hold them on different dates. See 12-15-311(a), Ala. Code 1975, ("If the juvenile court finds … that a child is dependent, the juvenile court may proceed immediately, in the absence of objection showing good cause or at a postponed hearing, to make proper disposition of the case."); Rule 25(a), Ala. R. Juv. P. (stating that in dependency actions, among other proceedings, "the juvenile court may proceed immediately to a dispositional hearing after adjudication or may set a dispositional hearing for a later date"). If the juvenile court holds the adjudicatory and dispositional hearings on different dates, the juvenile court lacks jurisdiction to make a custody disposition of a child in a dependency action unless the child is in fact still dependent at the time of the disposition. See K.C.G. v. S.J.R., 46 So. 3d 499, 502 (Ala. Civ. App. 2010).

The maternal grandparents alleged that the child was dependent because the mother was dead and the father was unable to discharge his parental responsibilities to the child. See § 12-15-102(8)2., Ala. Code 1975

(providing that a child who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child is dependent). The undisputed evidence at the final dispositional hearing established that the father had not used illicit drugs or alcohol since July 2020, which was approximately twenty months before the final dispositional hearing; that he had maintained employment for five months before the final dispositional hearing; that he had maintained stable housing at the rental house for two months before the final dispositional hearing; that he did not have any mental-health problems that would prevent him from properly parenting the child; and that the child had been safe during his unsupervised visits with the father. Therefore, we conclude that the juvenile court could not have reasonably been clearly convinced from the evidence introduced at the final dispositional hearing that the child was still dependent. See H.A.S. v. S.F., 298 So. 3d 1092, 1106 (Ala. Civ. App. 2019) (holding that the evidence at a final dispositional hearing held five months after the adjudicatory hearing was insufficient to clearly convince a juvenile court that the child remained dependent). Therefore, the juvenile court did not have jurisdiction to do anything other than to dismiss the dependency

16

actions pertaining to the child and allow custody of the child to be returned to the father. See J.A. v. C.M., 93 So. 3d 953, 955 (Ala. Civ. App. 2012) ("The only thing the juvenile court had jurisdiction to do after finding that the children were not dependent was to dismiss the dependency petition and to allow the custody of the children to be returned to the mother and the father.").

The dissent asserts that the juvenile court reasonably could have been clearly convinced that the child was dependent at the time of the dispositional hearing, because, the dissent says, (1) the father had a history of substance abuse, (2) the child had been in the custody of the maternal grandparents for eighteen months prior to the final dispositional hearing because of the father's substance-abuse problem, (3) the juvenile court could have found that the father's denying that East Alabama Mental Health Center had recommended that he undergo inpatient substance-abuse treatment was not credible, (4) the father had not attended any Narcotics Anonymous meetings for several months before the final dispositional hearing, and (5) the ore tenus rule cloaks the juvenile court's judgments with a presumption of correctness.

17

Although the father has a history of substance abuse, the undisputed evidence established that the father had not used illicit drugs or alcohol for twenty months before the final dispositional hearing. The undisputed evidence established that the father had been sober for two months before the juvenile court held that initial hearing regarding the maternal grandparents' dependency petition on September 29, 2020, but had agreed at that hearing that the child was dependent at that time. Thus, the undisputed evidence established that the father had not used illegal drugs or alcohol during the eighteen months the child had been in the pendente lite custody of the maternal grandparents. The fact that the father has a history of drug use before August 2020 does not prove that the child was dependent on the date of the dispositional hearing when the undisputed evidence established that the father had been sober for the twenty-month period immediately preceding the final dispositional hearing. If a parent's history of substance abuse ipso facto renders his or her child dependent, then no parent who has a history of substance abuse could ever regain custody of his or her child no matter how long he or she maintained sobriety.

18

With regard to the possibility that the juvenile court could have found that the father's denying that East Alabama Mental Health Center had recommended that he undergo inpatient substance-abuse treatment was not credible, the undisputed evidence established that he had been sober for twenty months when the juvenile court held the dispositional hearing; that undisputed evidence included the results of the father's drug tests and, therefore, did not rest solely on the testimony of the father. Hence, a credibility issue regarding the father's testimony that East Alabama Mental Health Center had not recommended that he undergo inpatient substance-abuse treatment would not have constituted a basis for disregarding the undisputed evidence that the father had been sober for the twenty-month period immediately preceding the dispositional hearing. Moreover, inpatient substance-abuse treatment is a means of achieving sobriety, but it does not guarantee that a patient will not relapse into substance abuse. The undisputed evidence in this case establishes that the father achieved sobriety and maintained it for twenty months without undergoing inpatient substance-abuse treatment. The undisputed evidence also

established that the father had maintained sobriety despite his failing to attend several Narcotics Anonymous meetings.

Finally, with respect to the dissent's contention that the ore tenus rule mandates an affirmance of the juvenile court's judgments, we note that the ore tenus rule does not apply when undisputed evidence establishes the material facts. See Lawson v. Harris Culinary Enters., LLC, 83 So. 3d 483, 491 (Ala. 2011). In the present case, the material fact was whether the father had achieved and maintained sobriety, and the undisputed evidence established that he had. Therefore, the ore tenus rule does not afford the juvenile court's judgments a presumption of correctness in this case.

Turning now to the question of the award of visitation to the maternal grandparents, although this court has held that a juvenile court has jurisdiction to grant grandparent visitation despite a finding that the child is not dependent when the grandparents have made a claim for grandparent visitation that is sufficient to invoke the juvenile court's subject-matter jurisdiction to grant grandparent visitation pursuant to § 12-15-115(a)(10), Ala. Code 1975, see M.G.D. v. C.B., 203 So. 3d 855, 859 (Ala. Civ. App. 2016), the maternal grandparents did not make such a

claim in this case. When such a claim is not made and a child is not found dependent, a juvenile court's judgment is void insofar as it purports to grant grandparent visitation. See L.M. v. G.S., 243 So. 3d 822, 826 (Ala. Civ. App. 2017). Accordingly, the juvenile court's judgments now before us are void in their entirety. Because a void judgment will not support an appeal, we dismiss the father's appeals with instructions to vacate its judgments, to dismiss the dependency actions pertaining to the child, and to allow the custody of the child to be returned to the father. Id.

CL-2022-0676 -- APPEAL DISMISSED WITH INSTRUCTIONS.

CL-2022-0677 -- APPEAL DISMISSED WITH INSTRUCTIONS.

Moore, Edwards, Hanson, and Fridy JJ., concur.

Thompson, P.J., dissents, with opinion.

THOMPSON, Presiding Judge, dissenting.

I disagree with the main opinion's holding that the evidence did not support the judgment of the Lee Juvenile Court ("the juvenile court") finding that the child remained dependent. The evidence indicates that M.A. ("the father") has a history of abusing heroin, methamphetamine, cocaine, and prescription medications. Because of that drug use, the child, who was only four-and-a-half years old at the time of the March 30, 2022, hearing, had been in the custody of the maternal grandparents since September 30, 2020, i.e., approximately 42 months by the time of that hearing. The father's medical records indicate that he refused in-patient, residential substance-abuse treatment and instead attended outpatient treatment. The father insisted that his medical records are incorrect and that, in spite of the nature of the substances he abused and his repeated hospitalizations, he was told that he did not need in-patient treatment. The father also disputed that part of his medical records that stated that he had minimized the severity of his substance-abuse addiction. The juvenile court was in the best position to observe the witnesses as they testified and to evaluate their demeanor and credibility. It is the province of the juvenile court, as the trier of fact, to

22

resolve factual disputes in the evidence. <u>Ex parte Fann</u>, 810 So. 2d 631, 633 (Ala. 2001).

> "Because appellate courts do not weigh evidence, particularly when 'the assessment of the credibility of witnesses is involved,' <u>Knight [v. Beverly Health Care Bay Manor Health Care Ctr.</u>], 820 So. 2d [92,] 102 [(Ala. 2001)], we defer to the trial court's factual findings. 'The ore tenus rule reflects this deference; it accords a presumption of correctness to the trial court's findings because of that court's unique ability to observe the demeanor of witnesses.' <u>Id.</u>; <u>see also</u> <u>Fitzgerald v. Jeter</u>, 428 So. 2d 84, 85 (Ala. Civ. App. 1983), and <u>Ex parte Fann</u>, 810 So. 2d 631, 633 (Ala. 2001)."

<u>J.C. v. State Dep't of Hum. Res.</u>, 986 So. 2d 1172, 1185 (Ala. Civ. App. 2007). <u>See also</u> <u>J.P. v. Calhoun Cnty. Dep't of Hum. Res.</u>, 222 So. 3d 1177, 1179 (Ala. Civ. App. 2016) ("'The juvenile court heard ore tenus evidence regarding dependency; therefore, its judgment is accorded a strong presumption of correctness.'" (quoting <u>A.M.W. v. A.G.M.</u>, 189 So. 3d 75, 77 (Ala. Civ. App. 2015))); and <u>A.T. v. A.G.</u>, 81 So. 3d 385, 389 (Ala. Civ. App. 2011) ("'"[B]ecause the trial court has the advantage of observing the witnesses' demeanor and has a superior opportunity to assess their credibility, this Court <u>cannot</u> alter the trial court's judgment unless it is so unsupported by the evidence as to be clearly and palpably wrong."'" (quoting <u>Ex parte Fann</u>, 810 So. 2d 631, 636 (Ala. 2001))).

23

In addition to the disputed facts discussed above, the record indicates that at the time of the hearing in this matter, the father had been living independently for only two months. He also admitted at the hearing on the merits that he had not attended a Narcotics Anonymous meeting since October or November 2021, i.e., four to five months earlier. The juvenile court was not required to believe the father's assertions that he was capable of independently caring for this very young child, and it was free to consider all of the evidence presented to it. "'In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief.'" Ex parte R.E.C., 899 So. 2d 272, 279 (Ala. 2004) (quoting Clemons v. Clemons, 627 So. 2d 431, 434 (Ala. Civ. App. 1993)). Although the main opinion might have reached a different result than did the juvenile court, the record contains evidence supporting the juvenile court's dependency determination. Montgomery Cnty. Dep't of Hum. Res. v. T.S., 218 So. 3d 1252, 1268 (Ala. Civ. App. 2016); L.R.M. v. D.M., 962 So. 2d 864, 873 (Ala. Civ. App. 2007). Given the evidence in the record and the fact that this court may not reweigh the evidence that was presented to the juvenile court, I conclude that the

main opinion has impermissibly reweighed the evidence presented to the juvenile court and that it errs in reversing the judgment in this matter. See Ex parte R.E.C., 899 So. 2d at 279 ("'[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.' Ex parte Foley, 864 So. 2d 1094, 1099 (Ala. 2003) (citations omitted)).

I note that the father has not argued that the juvenile court's dependency determination is inconsistent with an award of custody to him. In fact, the Alabama Juvenile Justice Act ("the AJJA"), § 12-15-101 et seq., Ala. Code 1975, allows the juvenile court to make any custodial disposition that is in the best interests of a dependent child. § 12-15-314, Ala. Code 1975. One of the goals of the AJJA is, in part, to reunite a parent and a child "as safely as possible." § 12-15-101(b)(3), Ala. Code 1975. "The power to declare a child dependent, once exercised by the juvenile court, carries with it the authority to dispose of the custody of the child in any manner the juvenile court deems in the best interests of the child, see Ala. Code 1975, § 12-15-314(a)(3)c., ...." G.H. v. Cleburne Cnty. Dep't of Hum. Res., 62 So. 3d 540, 551 (Ala. Civ. App. 2010) (Moore, J., concurring in the result). In its judgment, the juvenile court stated

25

that "the child <u>remains</u> dependent until further observation can occur." (Emphasis added.) The child is only four-and-a-half-years old, and, with regard to his being placed in the father's home, the evidence supports a conclusion that the child still needs "the care and protection of the State." § 12-15-102(8)8., Ala. Code 1975 (defining the term "dependent child"). The evidence supports a conclusion that the father has not been stable for a sufficiently long period of time to ensure the safety of the child in his care, and, therefore, that the child remains dependent. I would affirm the juvenile court's dependency determination.

If a juvenile court finds a child to be dependent, § 12-15-314(a)(1), Ala. Code 1975, allows the juvenile court, when it makes a custodial disposition, to "'[p]ermit the child to remain with the parent, legal guardian, or other legal custodian of the child, subject to conditions and limitations as the juvenile court may prescribe.'" <u>J.W. v. T.D.</u>, 58 So. 3d 782, 790 (Ala. Civ. App. 2010) (quoting § 12-15-314(a), Ala. Code 1975). In this case, the juvenile court imposed conditions and limitations upon the award of custody of the child to the father pursuant to its dependency determination. I believe the specification in the April 11, 2022, dependency judgment that the child "remains dependent until further

observation can occur" itself constitutes a limitation or condition on the award of custody of the dependent child to the father. That condition or limitation demonstrates that the juvenile court intends to continue to supervise the matter to ensure the safety and best interests of the child. Further, that limitation or condition on the award of custody to the father is consistent with the well-settled law that the best interests of a child are paramount in a dependency action, explaining:

> "'[I]t is the [juvenile] court's duty to scrupulously guard and protect the interests of children,' Ex parte Fann, 810 So. 2d 631, 638 (Ala. 2001), and the stated purpose of the Alabama Juvenile Justice Act, codified at Ala. Code 1975, § 12-15-101 et seq., 'is to facilitate the care [and] protection ... of children who come under the jurisdiction of the juvenile court.' § 12-15-101(a)[, Ala. Code 1975].'"

Ex parte M.J.W., 62 So. 3d 531, 536 (Ala. Civ. App. 2010). See also W.T.M. v. S.P., 889 So. 2d 572, 580 (Ala. Civ. App. 2003) (Murdock, J., with Thompson and Pittman, JJ., concurring in the result) ("[W]e have long stated in both child-custody and dependency cases that the primary concern is the best interests and welfare of the child.").

Moreover, in its April 11, 2022, judgment, the juvenile court set forth other conditions and limitations on the award of custody to the father. First, the juvenile court specified that if C.S. and A.S. ("the

27

maternal grandparents") asked the father to submit to a drug screen "at any time," the father was required do so within 48 hours. In addition, the father was ordered to sign releases making the results of any drug screens available to the maternal grandparents. In its April 11, 2022, judgment, the juvenile court also ordered that if the maternal grandparents were willing to pay for family counseling, the father was required to "make reasonable efforts to attend and participate" in that counseling. The conditions imposed by the juvenile court in its April 11, 2022, judgment provide further support for the conclusion that the juvenile court did not err in finding the child dependent. I also note that the father has not challenged on appeal the imposition of those conditions and limitations set forth in the juvenile court's dependency judgment.

The father also argued that the juvenile court lacked jurisdiction to award C.S. and A.S. ("the maternal grandparents") visitation with the child. The father contends that the maternal grandparents did not assert a claim for visitation with the child. However, as this court did in M.G.D. v. C.B., 203 So. 3d 855, 857 (Ala. Civ. App. 2016), I conclude that the issue was sufficiently presented to the juvenile court during the hearing in the matter. Moreover, where, as here, a child is determined to be dependent,

28

a juvenile court "may make any other order as the juvenile court in its discretion shall deem to be for the welfare and best interests of the child." § 12-15-314(a)(4), Ala. Code 1975. I conclude that the evidence supports the juvenile court's dependency finding, and, therefore, that the juvenile court had jurisdiction to enter that part of its order awarding the grandparents visitation with the child so as to allow the child to maintain a relationship with the family members who had reared him since June 2020.[2]  I would affirm the juvenile court's judgment.

---

[2]In his appellate brief, the father raises arguments concerning the Grandparent Visitation Act, § 30-3-4.2, Ala. Code 1975, and his rights to refuse visitation to the child's grandparents. I do not reach those arguments because I conclude that the juvenile court could properly award the grandparents a schedule of visitation pursuant to its dependency jurisdiction.