Katherine Lynn Lewis ("the mother") appeals from a judgment transferring the physical custody of the parties' two minor children.
The mother and Steve Allen Lewis ("the father") were divorced in November 2001. The parties have twins, a son and a daughter, who were four years old at the time of the divorce and eight years old at the time of the trial in this case. The divorce judgment awarded the parties "joint custody" of the children, with the mother having "primary custody" and the father having reasonable rights of visitation. In March 2002, the trial court entered an order that, among other things, increased the amount of the father's child-support obligation but did not alter custody of the children.
In June 2005, the father filed a petition to modify custody, alleging that there had occurred a material change in circumstances since March 2002 that necessitated a change in custody and that "the positive good that would result to the children from the change in the primary physical custody would greatly outweigh any disruptive effects that might be caused thereby." The father alleged that
 "a change in custody would provide better day to day living conditions, more stability, more attention, more family time, more security and less negative influences for the minor children. The children want to live with their father. The Plaintiff/Mother has had a man spend the night in her home with the children present."
On August 9, 2005, the trial court conducted an ore tenus proceeding at which it *Page 898 
heard testimony from the parties, both children, and others. On August 16, 2005, the trial court entered a judgment granting the father's petition to modify custody. The judgment provided, in pertinent part:
 "[The father's alleged grounds for a modification of custody] include partiality and harshness in discipline between the two children, lack of time and attention devoted to them, inadequate housekeeping, and presence of a male in the home overnight from time to time.
 "Upon hearing the evidence, the Court finds that there has been a material change of circumstances in that there was material proof of all of the aforementioned other than the lack of impartiality in discipline. Additionally, the children are strong and articulate in their desire to live with their father. Therefore, the Court changes primary custody of the minor children to [the father] with [the mother] to have the same rights of visitation under the Divorce Decree as granted to the non-custodial parent. The Court finds that the benefits accruing to the children from such a change would outweigh any disruptive effect particularly since the children would remain in the same school."
The mother filed a postjudgment motion, which was denied.
The mother appeals, contending (1) that the trial court denied her due process by arbitrarily limiting to one hour the amount of time that each party had to present his or her evidence and by allowing the father to exceed his allotted amount of time and (2) that the father did not meet the burden imposed on him by Ex parte McLendon, 455 So.2d 863
(Ala. 1984).
The parties are both public-school teachers in the Dothan area. The father is a high-school teacher and golf coach. The mother teaches fourth grade in the same school that the children attend. The parties live within a few miles of each other, and the children will be able to attend the same school regardless of which party has physical custody.
During the 2003-2004 academic year, the mother hosted two high-school foreign-exchange students in her home. Those students were both females and were 16 years old when they lived with the mother and the children.[1] The evidence shows that the children liked the exchange students and that there were no particular problems with the exchange students.
In 2004, the mother obtained approval from the Alabama Department of Human Resources to be a foster parent. The mother completed a 10-week training course and passed the required background checks and home inspections. From August through October 2004, the mother served as a foster parent for an 18-year-old girl who was learning disabled. From November 2004 through June 2005, the mother was foster mother to J.M. At the time of the trial, J.M. was 18 years old and had a 19-month-old baby of her own who lived with J.M. in the mother's home. During her stay in the mother's home, J.M. was working full-time.
There is evidence in the record to support the trial court's findings concerning the mother's lack of time and attention to the children. J.M. testified that the mother's home was frequently "hectic" because the mother would start too many things and would then be unable to finish any of them. J.M. also testified that, in her opinion, *Page 899 
the mother did not spend enough time with the children. It appears that the hectic conditions in the mother's home were exacerbated by the mother's admittedly messy housekeeping.
The father testified that the mother's home was in "utter chaos" and lacked stability because of the coming and going of the exchange students and the foster children. The father testified that he felt that the mother could not give adequate time and attention to the parties' children and also care for the exchange students and the foster children, some of whom the father described as "high maintenance."
There is evidence in the record indicating that the mother was harsh in disciplining the children and that she often yelled at both children and often spanked the son. J.M. testified that the children were more scared and reserved around the mother than they were around the father. A friend of the father testified that the son was more reserved than he had been before the divorce. Both children testified that they much preferred to live with the father because he was nicer and his discipline was not as harsh. There is evidence indicating that the children began asking to live with the father shortly after the divorce.
Finally, there is evidence indicating that the mother's boyfriend had spent four or five nights in the mother's home while the children were present. The record also shows, however, that on each occasion the mother and the boyfriend slept in different rooms.
The mother's first contention is that the trial court erred by arbitrarily limiting each party to one hour in which to present his or her evidence and by allowing the father additional time not granted to the mother. In general, a trial court does not have discretion to arbitrarily limit the time in which the parties must present their evidence and "`a trial court may not simply disallow testimony due to time constraints and the desire to clear its docket.'" Harbert v.Harbert, 721 So.2d 224, 225 (Ala.Civ.App. 1998) (quotingMorrison v. Morrison, 628 So.2d 839, 841
(Ala.Civ.App. 1993)).
In this case, however, the mother did not preserve these arguments for appellate review. Among other things, she did not object to the time limitation or request additional time in which to complete the presentation of her evidence. Davis v.Southland Corp., 465 So.2d 397, 402 (Ala. 1985) ("Timely objection is a condition precedent to raising an error on appeal.").
The mother's second contention is that the father did not meet the burden imposed on him by Ex parte McLendon,supra. As to this substantive contention, we note the presumption of correctness accorded to the trial court's judgment:
 "When this Court reviews a trial court's child-custody determination that was based upon evidence presented ore tenus, we presume the trial court's decision is correct: `"A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong. . . ."' Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App. 1993) (citations omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. `In child custody cases especially, the perception of an attentive trial judge is of great importance.' Williams v. *Page 900 Williams, 402 So.2d 1029, 1032
(Ala.Civ.App. 1981)."
Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001).
To the extent that the trial court did not make detailed written findings of fact, we must "`assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.'" Ex parteFann, 810 So.2d at 636 (quoting Lemon v. Golf TerraceOwners Ass'n, 611 So.2d 263, 265 (Ala. 1992)). Moreover, we note that it is not the role of the appellate courts to reweigh the evidence. Ex parte Bryowsky, 676 So.2d 1322, 1324
(Ala. 1996).
Ex parte McLendon provides that when one parent has been awarded sole physical custody,
 "`the party seeking modification [must] prove to the court's satisfaction that material changes affecting the child's welfare since the most recent [judgment] demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child.'"
455 So.2d at 865 (quoting Wood v. Wood,333 So.2d 826, 828 (Ala.Civ.App. 1976)).
The trial court found that there had been a material change in circumstances since the entry of the March 2002 modification order and "that the benefits accruing to the children from such a change [of custody] would outweigh any disruptive effect." We have reviewed the record and conclude that there is evidence to support the trial court's determination. Although the parties have not experienced what could be considered major life changes — e.g., changing jobs, moving to a different town, remarriage, health problems, etc. — since the divorce, the trial court could have concluded that the cumulative effect of the events and behaviors that the trial court found to have occurred was sufficient to constitute a material change in circumstances and to warrant a change of custody. See Exparte Devine 398 So.2d 686 (Ala. 1981) (listing factors to consider in determining custody).
Although many of the mother's behaviors at issue in this case were of concern to the father during the divorce proceeding, there is evidence indicating that the conditions in the mother's household have worsened since the entry of the March 2002 modification order.[2] The trial court could reasonably have concluded that the conditions in the mother's home have become more hectic and chaotic and that those conditions are materially affecting the children. Among other things, the trial court could have concluded that the presence of additional "high maintenance" children exacerbated the problems arising from the mother's lack of time and attention to the parties' children.
Further, the children both expressed a "strong and articulate" desire to live with the father. The preference of a child to live with a particular parent is not determinative, but it is a factor to be considered by the court. SeeOverturf v. Leverett, 702 So.2d 469, 471
(Ala.Civ.App. 1997) (affirming a change of custody based in large part on the child's desire to live with his father); andTerry v. Ragland, 666 So.2d 539, 541
(Ala.Civ.App. 1995) (trial *Page 901 
court properly considered the children's preferences, along with other factors, in modifying custody). The reasons given by the children for their desire to live with the father are consistent with testimony that the mother did not spend enough time with the children, that the mother's discipline was harsh and apparently ineffective, that the children were scared of the mother, and that the children were more reserved in the mother's presence.
Finally, the trial court reasonably could have concluded that the disruptive effect of a change of custody was not great. From the time of the divorce until the trial court's judgment, the father and the mother lived in the same community. The father exercised his visitation rights and was actively involved in the children's lives. Further, the children will continue to attend the same school and participate in the same activities regardless of which parent has primary custody.
Based on the record before us, and the deference owed to a trial court's judgment based on evidence received ore tenus, the trial court's judgment in this case is due to be affirmed.
The mother's and the father's requests for the award of attorney fees on appeal are denied.
AFFIRMED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.
[1] Before the parties divorced, they hosted a foreign-exchange high-school student in their home.
[2] The father testified that
 "the things that I knew about prior to the divorce that were not brought out in court have gotten even worse since then, especially with the introduction of all these people [the children] have had to live with. I have always asked, when are they going to have their own childhood? They are always accommodating everybody else."