THOMPSON, Presiding Judge.
On March 4, 2015, M.F.J. (“the paternal grandmother”) and A.F.J. (M.F.J. and A.F.J. are hereinafter referred to collectively as “the paternal grandparents”) filed in the Franklin Juvenile Court (“the juvenile court”) petitions seeking to terminate the parental rights of B.H. (“the mother”) and T.A.F. (“the father”) to their two minor children, Z.H. and J.H. The father filed affidavits in the juvenile court in which he consented to the termination of his parental rights.
After conducting an ore tenus hearing on both petitions, the juvenile court, on June 3, 2015, entered a single judgment, applicable to both cases, in which it terminated the parental rights of the mother and the father to their two minor children. The mother timely appealed. In its judgment, the juvenile court set forth a full recitation of the facts and its legal conclusions as follows:
“Based on the testimony presented, Stacy Garden, a social worker with the Franklin County Department of Human Resources [(‘DHR’)], began working with this family shortly after the birth of [Z.HJ. The child tested positive for marijuana when she was born. [Z.H.] and her sibling, [J.H.], were placed in DHR custody.
“DHR began providing services to the mother. [The mother] completed parenting classes, one 28-day substance abuse treatment program, and one session with FOCUS. During the time DHR had custody of the children the mother had four or five different residences. She was unemployed, but she receives a disability check that she says is for memory problems. The children were returned to the mother July 25, 2011, and the case remained open for protective services. The mother tested positive for cocaine. The children were removed a second time on September 14, 2011, and were placed back into foster care.
“Ms. Garden located a relative, [the paternal grandmother]. When [the paternal grandmother] found out that the children were in foster care, she requested relative placement in her home. [The paternal grandparents] were approved as foster parents and the children were placed in their home in March 2012. Visitation was set up on the weekends.
“Based on the results of genetic testing [the father], the son of [the paternal grandmother], was determined to be the biological father of both children. DHR was relieved of custody August 26, 2013, and at that time custody was awarded to [the paternal grandparents], who live in Berry, Alabama. During the time [the paternal grandparents] have had custody, the mother has not provided any monetary assistance for the children. The mother testified at the hearing she had not used any illegal drugs in over a year. However, on the day of the hearing she tested positive for cocaine, marijuana and alcohol.
“The mother has been very inconsistent with her visitation. She has scheduled visitation with the children one weekend a month. At the time [the paternal grandparents] were awarded custody of the children, the mother also lived in Berry, Alabama, approximately one mile from the [the paternal grandparents’] home. She later moved to Florence, Alabama, which is several miles from Berry, Alabama. She moved away from Berry because her bills were too high. [The mother] does not have a driver’s license or independent transportation. After she moved, she did not see the children in December 2013 and she missed visits in January and February 2014. She visited the children March *999 through June of 2014. She did not visit during the month of July 2014, and did not visit or call [Z.H.] on her birthday. [J.H.’s] birthday is in August. During August, 2014, she did not call or visit with the children., It was her testimony that the [paternal grandparents] stopped her visitation and told her she would have to go to court to see her kids. The last time [the mother] saw her children was September 2014. She has talked to the children once on the phone since September 2014. While the children have been in the [paternal grandparents’] home, the mother has never bought them gifts or provided any financial support.
“[The father] has consented to the termination of his parental rights.
“The children have thrived in the [paternal grandparents’] home. [J.H.] has asthma and allergies, but these medical issues are under control. [Z.H.] has an allergy with an occasional flare up. They do not have any other health problems. The children are well adjusted to the home and are doing well in school. They have a set routine in the [paternal grandparents’] home. [The paternal grandmother] works at the Walker County Sheriffs Department as an Administrative Assistant to the Walker County Sheriff. It is the intention of [the paternal grandparents] that they adopt these children.
“Based on the testimony and evidence presented, the Court finds from clear and convincing, competent, material and relevant evidence that the conduct of [the mother] renders her unable to properly care for the minor children, [Z.H.] and [J.H.], and her conduct is unlikely to change in the foreseeable future. Based on the testimony and evidence presented, the Court finds ... from clear and convincing evidence that [the mother] is unable to discharge her responsibilities to and for the children and that the ■ minor children have been and continue ■to be- dependent children. The Court further finds from clear, convincing, competent, material and relevant evidence the following:
“1. That reasonable efforts by the Department of Human Resources leading toward the rehabilitation of [the mother] have failed.
“2. That while. [Z.H.] and [J.H.] were in the custody of DHR, [the mother] failed to provide for the. material needs of the minor children.
“3. That while [Z.H.] and [J.H.] were in the custody of [the paternal grandparents], [the mother], failed to provide for the material needs of the minor children.
“4. [The mother] failed to adjust her circumstances to meet the needs of the minor children in accordance with the Individualized Safety Plan agreement with DHR.
“5. [The mother] has abandoned the minor children since September 2014.
“6. [The father] consented to the termination of the parental rights.
“7. There are no other viable options.
“The Court also finds from clear and convincing evidence that all viable alternatives • to the termination of parental rights have been considered and it is in the best interest of [Z.H.] and [J.H.] to terminate the [mother’s] parental rights to the minor children, [Z.H.] and [J.H.].”
On appeal, the mother argues that the juvenile court erred in terminating her parental rights. When a nonparent petitions to terminate the parental rights of a parent, a juvenile court must apply a two-pronged test to determine whether to terminate parental rights:
*1000 “A juvenile court is required to apply a two-pronged test in determining whether to terminate parental rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable altema-,tives to a termination of parental rights.” . , i .
B.M. v. State, 895 So.2d 319, 331 (Ala.Civ.App.2004) (citing Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990)). The statutory grounds for terminating a parent’s parental rights are' found at § 12-15-319, Ala. Code 1975.
“It is well settled that the paramount concern in proceedings to terminate parental rights is the best intérest of the child. See Ex parte J.R., 896 So.2d 416, 423 (Ala.2004); A.A. v. Cleburne County Dep’t of Human Res., 912 So.2d 261, 264 (Ala.Civ.App.2005). ‘The trial court, as opposed to a reviewing, court, is in the best position to evaluate the circumstances of each case and to determine the best interests of the [child].’ A.R.E. v. E.S.W., 702 So.2d 138, 141 (Ala.Civ.App.1997). Likewise, the trial court is in the best position to resolve conflicts in evidence offered by the parties at the final hearing. See D.M. v. Walker County Dep’t of Human Res., 919 So.2d 1197, 1214 (Ala.Civ.App.2005) (quoting Ethridge v. Wright, 688 So.2d 818, 820 (Ala.Civ.App.1996)) (‘ “The trial court, as the finder of fact, is required to resolve conflicts in the evidence.” ’).”
R.S. v. R.G., 995 So.2d 893, 903 (Ala.Civ.App.2008).
The mother contends that the evidence does not support the termination of her parental rights, and she argues that the termination of her parental rights was “premature.” The children have been out of the mother’s custody since July 2010, with the exception of a two-month period in the fall of 2011, when an attempt by the Franklin County Department of Human Resources (“DHR”) to return the children to the mother’s custody failed because of the mother’s continued use of illegal drugs. The mother has visited the children only sporadically since the time they were placed in the paternal grandparents’ custody. The mother admitted at the May 7, 2015, termination hearing that she had not visited the children at all since September 2014. ■
The mother maintains in her appellate brief that she had not visited the children because of transportation issues and a lack of money. However, at the termination hearing the mother testified' that she had not attempted to visit the children while they were • in' the paternal grandparents’ custody because, she said, the paternal grandmother was “mean” and was focused on following rules pertaining to visitation. The mother indicated that she did not want to interact with the paternal grandmother. The mother stated that she was waiting on the next court date for the court to order visitation for her; she admitted that she knew that, before the paternal grandparents filed the termination petitions, no court action had been pending since the entry of the August 2013 order that relieved DHR of its duty to supervise the case and awarded her monthly visitation with the children.
The mother also insisted during the termination hearing that she had not used marijuana, cocaine, or alcohol in more than a year, and she stated that she was prepared to take a drug test to prove that assertion. However, the juvenile court’s judgment indicates that the mother tested positive for all three substances on the date of the termination hearing.
Thus, the evidence indicates that the mother had visited the children only sporadically and had failed to visit or contact *1001 them for a period of approximately nine months. At the time of the termination hearing, the mother was continuing to use illegal drugs. To the extent that the mother argues in her appellate brief that she was not given sufficient time to address her substance-abuse problems, we reject that argument. The evidence is clear that the children have been out of the mother’s custody for the vast majority of their lives and that the circumstances that led to their removal from her custody have continued since 2011-,
The juvenile court was in thé best position to observe the parties and witnesses as they testified and to assess 'their credibility and demeanor, and, therefore, there is a presumption of correctness in favor of the juvenile court’s resolution of factual disputes. Ex parte Fann, 810 So.2d 631, 633 (Ala.2001). This court’s review of the testimony from the hearing on the petitions to terminate the mother’s parental rights supports the juvenile court’s findings as set forth in its June 3, 2015, judgment. Although the mother blamed the paternal grandmother for her own failure to visit or maintain contact with the children, other aspects of the mother’s testimony clearly lacked credibility; thus, the juvenile court was free to accept only that testimony it deemed worthy of belief. C.J. v. Marion Cnty. Dep’t of Human Res., 5 So.3d 1259, 1271 (Ala.Civ.App.2008). ■
The mother has briefly argued before this court that she was unable to contribute to the support of the children because of her poverty and that, therefore, the juvenile court.erred in relying on her failure to contribute to the children’s support in terminating her parental rights. However, the mother did not testify that she was unable to contribute in any way to the children’s support. Rather, she stated only that she had not done so and that she had not purchased clothes or gifts for the children during the time they have been in the paternal grandparents’ custody.
Further, it appears that, in terminating the mother’s parental rights, the juvenile court focused on the mother’s failure to visit the children or to maintain contact with them, i.e,, on her abandonment of the children. See § 12-15-301(1), Ala.Code 1975 (defining “abandonment” as “[a] voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his or her presence, care, love; protection, maintenance, or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent”); and § 12-15-319(b), Ala.Code 1975 (providing that there is' a ’rebuttable presumption that a parent is unwilling or unable to parent the child when the parent has abandoned a child for a four-month period preceding the filing of a termination action). The record demonstrates that the juvenile court focused on the evidence indicating that the mother had abandoned the children.[1] We cannot say that the mother has demonstrated that the juvenile court erred in determining *1002 that grounds existed warranting the termination of her parental rights.
The mother briefly argues that the juvenile court erred in determining that DHR had made reasonable efforts toward reunification. That finding appears to pertain to the first time the children were removed from the mother’s custody. DHR was removed as a party to this matter in 2013, and it is not a party to this appeal.[2] Thus, there was no duty upon DHR to provide rehabilitation services after 2013. It appears that, in referencing in its judgment that “reasonable efforts ... toward reunification” have failed, the juvenile court was noting that DHR had made an unsuccessful effort to prevent the children from being placed with relatives, and such an acknowledgment by the juvenile court is not error. To the extent the juvenile court might have relied on an erroneous belief that DHR was required to provide further rehabilitative services, we conclude that that finding was harmless error, and, given the remainder of the evidence supporting termination of the mother’s parental rights, it does not warrant reversal. See Rule 45, Ala. R.App. P.; T.W.W. v. Lauderdale Cnty. Dep’t of Human Res., 628 So.2d 761, 762 (Ala.Civ.App.1993).
The mother has failed to demonstrate error on appeal. We therefore affirm.
2140767-AFFIRMED.
2140768-AFFIRMED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. The mother has not challenged the finding that she abandoned the children. We note that the petitions to terminate her parental rights were filed on March 4, 2015. The mother testified that she spoke to the children on the telephone in late March 2015, but she does not dispute that between September 2014 and March 4, 2015, she had not contacted or visited the children. We also note that the mother did not initiate the late March 2015 contact with the children. The paternal grandmother also has custody of the children of the mother’s oldest daughter, who contacts those children by telephone. In late March 2015, when the mother’s oldest daughter called her own children, the mother, who was visiting her oldest daughter’s home at the time of that telephone call, spoke with the children.

. The mother named only DHR as an appellee in her notices of appeal. DHR moved this court to correct the style of the appeals to reflect the actual parties. The paternal grandparents have appeared in these matters as appellees. This court granted DHR’s motion and has corrected the style of these appeals.